No. 29,790.

WILLIAM E. KEEFE, *Appellant*, v. ALICE M. KILL et al., *Appellees*.

(9 P. 2d 640.)

Opinion filed April 9, 1932.

*F. S. Jackson, James E. Smith, Schuyler Jackson*, all of Topeka, *Thomas C. Forbes* and *Carl C. Chase*, both of Eureka, for the appellant.

*Thomas E. Wagstaff* and *Jay W. Scovel*, both of Independence, for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This action was brought to establish an oral contract, set aside a deed and contest the validity of a will.

Michael Keefe and Mary A. Keefe were husband and wife, and

prior to 1872 lived in Wisconsin. At that time they were the parents of two children, the plaintiff and a brother, Alexander John Keefe. About 1869 the grandfather of the two children deeded them a small farm in Wisconsin. The mother was subsequently appointed guardian of the two children and in 1871, as such guardian, she sold the farm for $800. No accounting was made to the court of the disposition of the $800, and it appears to have been used in the support of the family. There is evidence tending to show that the parents entered into an oral agreement with the plaintiff, his brother, and their grandfather, to the effect that if the plaintiff and his brother would not disturb the sale and would live near by and assist them through life, that on their death an adjustment of the matter would be made, and the boys, or the survivor, would receive the full principal of the money, and in addition thereto a fair interest or profit thereon. Alexander John Keefe died in March, 1894, without issue and unmarried. The parents left surviving them at their death the plaintiff and the defendant, their daughter, Alice M. Kill. Michael Keefe and his wife, through their joint efforts, accumulated some property and in the early nineties acquired the land in question, and the title was taken in the name of Mary A. Keefe. The plaintiff lived with his parents on the farm until 1895, when he married and moved to a residence in Elk Falls, where he and his family resided at the time of the trial. The plaintiff and his father carried on a joint enterprise in the stock business for several years. The defendants married in 1900, and, since June, 1901, have occupied the land in question, for which they paid rent to the father, and at the time of his death were indebted to him in the sum of $3,300. In 1903 Michael Keefe and his wife moved to Moline, where they resided until 1912. There is evidence to the effect that in 1912 the mental condition of Mary A. Keefe became so bad that it was necessary for them to return to Elk Falls, near the children. For a short time they lived in a cottage by themselves, but later, the condition of Mrs. Keefe becoming much more acute, the plaintiff arranged for them to live in a small cottage belonging to him in the same yard with his residence. They lived there until about 1921. Mrs. William Keefe did all their cooking, laundry work, and to a large degree all of the household work necessary for them to continue their life in the little cottage. In 1922 a quarrel occurred between the plaintiff and his wife, and the defendants, which appears to have grown out of neighborhood gossip to the effect that Mrs. Keefe had complained

of the burden of the care of the old couple. The result was that the old couple moved into a small cottage near the residence of the defendants, where they resided until August 22, 1922, when Mary A. Keefe died. The husband continued to reside either in the cottage or with the Kills until the date of his death, which occurred January 29, 1926.

On June 18, 1917, Mary A. Keefe and Michael Keefe executed and delivered a deed to the defendant, Alice M. Kill, conveying the land in question, in which deed they reserved a life estate. The deed was filed for record in the office of the register of deeds on June 18, 1917. On September 2, 1925, Michael Keefe executed a will, which was properly witnessed and in due form. After making a number of bequests to his grandchildren, and also a bequest of $10 to his son, the plaintiff, the residue of the estate was devised and bequeathed to Alice M. Kill, and she was made executrix of the will. The will was regularly admitted to probate on the 4th day of February, 1926.

The trial court impaneled a jury and submitted to it special questions to be answered. The jury found that Michael Keefe and Mary A. Keefe made an oral agreement with the plaintiff and his brother, in substance, as claimed by the plaintiff, and that the plaintiff performed his part of the agreement and should recover from the estate $2,114; that Michael Keefe was of sound mind and memory when he executed his will and was not under any undue influence; that Michael Keefe and Mary A. Keefe were mentally capable of executing the deed or transacting business of any kind on June 17, 1917, and that Mary A. Keefe was the owner of the land at the time the deed was made; that the consideration for the deed was love and affection and that no unfair advantage was taken by the grantee of the grantors in the deed, and the grantee acted in perfect fairness toward her parents and without abusing any confidence that may have been reposed in her. The court, upon the return of the verdict and after due consideration thereof, found that there was no contract between Michael and Mary Keefe on the one hand, and William Keefe and Alexander Keefe on the other, as set out in plaintiff's petition; that at the time Michael Keefe made his will he was competent to make a valid will and was not under any undue influence; that the title to the real estate was taken in the name of Mary A. Keefe as a convenience; that she was in fact the owner of only an undivided one-half interest therein, notwithstanding the

fact that the title stood in her name; that she was not acting under any undue influence, but did not possess sufficient mental capacity to execute a good and valid deed. The court decreed that the plaintiff was the owner of an undivided one-eighth interest in the land. Motions for new trial were filed by both parties, overruled and both parties have appealed. For convenience the parties will be referred to herein as plaintiff and defendants.

The plaintiff contends that the evidence clearly establishes the oral contract and that the court should have adopted the findings of the jury. The only evidence which tends to establish an oral agreement was the testimony of the plaintiff, who testified that the contract was made in his presence between his brother and his parents for his benefit, and he took no part in the conversation. This conversation took place in February, 1889. The jury in answer to special questions found that an agreement was made. The court set the findings aside and held that no agreement was made. This was a question of fact for the trial court to determine and it was its duty to weigh all of the surrounding circumstances, including the demeanor of the witness on the stand, and determine whether the evidence clearly and unequivocally established the facts necessary to be proven. (*Wilson v. Stafford,* 124 Kan. 382, 260 Pac. 627.) The trial court was not bound by the findings of the jury. . It served only in an advisory capacity, and in such case it is the duty of the trial court to weigh the testimony and determine for itself the facts in the case. (*Bell v. Skinner,* 119 Kan. 286, 239 Pac. 965; *Maddy v. Hock,* 134 Kan. 15, 4 P. 2d 408.) The facts having been regularly determined by the trial court, this court is bound thereby.

It is next contended that the will was void because the testator lacked mental capacity and was under the undue influence of Alice M. Kill and Teresa Kill when the will was executed; that Teresa Kill was the agent of Alice M. Kill, the principal beneficiary, and directed the drawing of the will, and the testator was without independent advice. The evidence as to the mental capacity of the testator and undue influence is quite voluminous. There was sufficient evidence, had it been accepted by the court, to warrant a finding either way. The weighing of this testimony and determining the facts in the matter was the function of the trial court. The jury found that the testator was of sound mind and memory and not under any undue influence at the time the will was executed. The court approved this finding, and, under the circumstances, we

are bound to accept this finding of fact as the settled fact in this case. There is, however, little or no conflict in the testimony relating to independent advice and we will consider this testimony for the purpose of determining whether the statute relating to independent advice has been violated. The granddaughter, Teresa Kill, testified that for some time prior to August 25, 1925, she had been away from home and returned a few days prior to that date. She was assisting in caring for her grandfather, the testator. Her mother, on the date mentioned, was not at home. The grandfather asked her to take him to Howard, and after learning from her sister, Mary, that he had been wanting to go to Howard to have a will drawn she consented to take him and did take him on the date mentioned. Upon reaching Howard they made some inquiry about attorneys and finally went to the office of Clifford Sullivan, a practicing attorney. He had known the testator since 1916. He obtained from the testator and the granddaughter the necessary information for the drawing of the will and suggested that he would prepare it in accordance with the instructions and mail it to the testator for execution. The attorney testified:

"He told me what he wanted and when he came down to the children he said he wanted them to have so much and the old gentleman talked in sort of a muffled voice and these names are not familiar to me and I just asked this girl to spell them out for me and give me these names. . . . So far as I could see, he did not seem to be excited or under the influence of any kind. He was rational in every way so far as I observed."

The will was completed in accordance with the instructions and sent by mail to the testator. The granddaughter accompanied him to the local bank and at his request she called in the witnesses, and the will was regularly executed. The evidence of the witnesses to the will is to the effect that they signed as witnesses at the request of the testator, and the testator understood what he was doing. After the execution of the will it was delivered to Alice M. Kill, and she testified that this was the first information she had concerning the making of the will or the contents thereof.

It is earnestly insisted by the plaintiff that this evidence brings the will clearly within the case of *Flintjer v. Rehm,* 120 Kan. 13, 241 Pac. 1087, and that the case should be reversed on the ground that the testator was deprived of independent advice. In the case cited the will was prepared by the principal beneficiary, who at the time was the confidential agent of the testatrix, and the testatrix

did not have independent advice. This brought the case within the terms of the statute (R. S. 22-214) and the court in the opinion pointed out that the statute applies only when the will is written or prepared by the sole or principal beneficiary, who is the confidential agent of the testator. In the case under consideration the will was not written or prepared by the sole or principal beneficiary. The evidence is that the principal beneficiary had no knowledge of the will until after its execution. Under these circumstances the statute relating to independent advice has no application and the will must be sustained.

It is next contended by the plaintiff that the court erred in holding that Mary A. Keefe was the owner of an undivided one-half interest in the land, insisting that there was no evidence on this question. There was a lack of testimony supporting this conclusion, but the court appears to have adopted the plaintiff's theory. In the original petition it was alleged that Michael Keefe was the owner of an undivided one-half interest in the land and that the title was carried in the name of Mary A. Keefe for convenience, and in the amended petition it is alleged that Mary A. Keefe was the record title owner of the real estate, but that said property was the proceeds of the joint endeavor of the parties. Since the plaintiff injected this issue into the case and the court adopted his theory he is not in a position to complain, and the finding and judgment of the court is not reversible error. (*Spaulding v. Colvin*, 133 Kan. 409, 411, 2 P. 2d 82.)

The defendants contend that the plaintiff's cause of action to set aside the deed was barred by the statute of limitations on the theory that the action was founded on fraud and therefore barred in two years. The court found as a fact that Mary A. Keefe was not acting under any undue influence, but she did not possess sufficient mental capacity to execute a good and valid deed, and that Alice M. Kill, the grantee, acted in perfect fairness toward her parents and without abusing any confidence. The action was not founded or relief granted on ground of fraud and consequently the action was not barred by the statute of limitations.

Finding no reversible error in the record, the judgment is affirmed.