No. 35,172

In the Matter of the Estate of G. L. Horton, Deceased (ORINDA GARINGER, *Appellee,* v. P. S. HORTON et al., *Appellants*).

(118 P. 2d 527)

Opinion filed November 8, 1941.

*C. E. Carroll, A. E. Carroll,* both of Alma, *Hal Harlan* and *A. M. Johnston,* both of Manhattan, for the appellants.

*Owen S. Samuel,* of Emporia, and *A. K. Stavely,* of Lyndon, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This is an appeal from an order of the district court reversing an order of the probate court of April 11, 1940, refusing to probate the will of the late G. L. Horton.

The trial court found that G. L. Horton died on February 2, 1940, at the age of ninety-seven years, being at the time of his death a

resident of Wabaunsee county. He had been twice married, his first wife having died about 1871. The contestant, Adella Hamar, and the proponent, Orinda Garinger, were the only children of the first marriage. Mrs. Garinger was about two months old at the time of her mother's death and was immediately taken into the home of a Foster family who reared her. She did not return to her father's home until she was about eighteen years of age.

About 1875 G. L. Horton remarried. The contestants, Platt S. Horton and Emily E. Hinshaw, were the only children of the second marriage. His second wife died in 1907.

Mr. Horton was apparently a successful business man and accumulated an estate valued at $75,719.78, a portion of which came from his deceased brother's estate. About 1910 Mr. Horton moved into the home of his daughter, Orinda Garinger, at Harveyville, and resided there until his death in February, 1940, during which period Mrs. Garinger waited on him in sickness and in health —preparing meals, taking care of his clothing and doing his laundry. His eyesight failed about 1926, and thereafter she read the papers to him and kept him advised of current events. Because of his failing eyesight, Mrs. Garinger, about January, 1926, commenced to assist her father in looking after his business matters, he having authorized her to sign checks in his name, to make deposits of money for him, to keep some records and to transact other minor matters for him.

On December 28, 1926, when he was eighty-four years of age, Mr. Horton went to C. H. Houseworth, the banker with whom he dealt and in whom he had confidence, and stated that he wanted to make his will. At this time Horton was in good health except for his impaired sight.

At the death of Mr. Horton the will was offered for probate in the probate court of Wabaunsee county. A hearing was had on April 3, 1940, and on April 11, 1940, judgment was rendered refusing to probate the will. Thereafter appeal was duly taken to the district court, which court reversed the order of the probate court and the case is brought here for review.

The appellant presents for our consideration eight assignments of error, and in his brief suggests that there are eight questions involved, as follows:

"1. Did the testator G. L. Horton sign the purported will?

"2. If he did sign the will, was it signed in the presence of witnesses as required by statute?

"3. Was Orinda Garinger the principal beneficiary under the will of G. L. Horton?

"4. Was C. H. Houseworth, the scrivener of the will, the confidential agent and legal advisor of Orinda Garinger, the principal beneficiary, on December 28, 1926?

"5. Did Orinda Garinger occupy a position of trust and confidence to the testator on December 28, 1926?

"6. Did C. H. Houseworth occupy a position of trust and confidence to Orinda Garinger on December 28, 1926?

"7. Did G. L. Horton, testator, have and receive independent advice with reference to the execution of the will?

"8. Did the court err in refusing to make factual findings requested by appellants?"

It may be noted at the outset that on appeal this court considers only the questions: Are the findings made by the trial court sufficient and should certain requested findings have been made? If such findings are sufficient, are they supported by evidence? In a case such as this, the court is concerned only with evidence to support the findings made, and not with evidence which, if believed, would support contrary findings. (*Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812; *Smith v. Lockridge,* 145 Kan. 395, 65 P. 2d 345.)

The first two questions will be considered together. The court found (finding VIII): "When the will was written, Houseworth read it to Horton and asked him if that was the way he wanted to dispose of his property, and Horton informed him that it was. Houseworth then stated to Horton that it would be necessary to have two witnesses, and went to the outer room of the bank and called in two employees, H. M. Dutton and Minnie Cox, who was married to Mr. Taylor the next day. In the presence of these witnesses, Mr. Horton subscribed his signature, and the two witnesses then signed the will in his presence, as the same appears on the attestation clause on the will in question."

Dr. L. M. Tomlinson, called by proponent, testified that he saw Mr. Horton in December, 1926, in front of the bank and that they visited about three minutes; that Mr. Horton said he was going to have Mr. Houseworth draw up a will, and Mr. Horton went into the bank.

Mrs. Heinlein, an employee of the bank, testified that she remembered that on December 28, 1926, George L. Horton came into the bank and went into the back room; that after he had been there for some time, Mr. Houseworth came to the door and asked Minnie Cox and Horace Dutton to come back a minute, and that Mr. Horton came in by himself.

Mr. J. C. Shearman, a handwriting expert who had examined documents with the genuine signature of G. L. Horton, testified that in his opinion as an expert, the signature to the will was the genuine signature of G. L. Horton.

Mr. Houseworth when asked if he saw Mr. Horton sign the will, stated that he did; also, that he saw Minnie Cox and Mr. Dutton sign their names as witnesses.

Mr. H. M. Dutton's deposition shows that he had no independent recollection of being asked to sign as a witness.

Mrs. Minnie Taylor, formerly Minnie Cox, the other witness to the will, testified that she saw H. M. Dutton sign his name to the will and that she also saw Mr. Horton sign his name. Although she stated that she had no independent recollection of the transaction, she said that she wouldn't have signed it had she not done so in the presence of the others.

Both witnesses to this will testified that the signatures attached to the will were their own genuine signatures.

"It is a fundamental rule that the proof of the execution of a will does not depend upon the memory of the subscribing witnesses. A subscribing witness need not recollect the particulars attending the execution of the will, it being sufficient if he identifies his signature, and feels assured in his own mind that he would not have affixed it without first hearing the will acknowledged." (28 R. C. L. 372; see, also, *Estate of Tyler,* 121 Cal. 405; *Leatherbee v. Leatherbee,* 247 Mass. 138, 141 N. E. 669.)

During the years Mr. Horton mentioned the will to many of his acquaintances. In conversation with a Mr. Marrs he stated that his will had been left with Houseworth and was still in his hands. In 1931 he told Mrs. Sheetz that he had made a will leaving the bulk of his property to Mrs. Garinger. Mrs. Sheetz talked with Mr. Horton in front of Mr. Gebhart's store. He said: "His home, he felt as though it was his home and said she never charges me a cent, I have been there for some time, she has taken care of me, looked after me, and I don't pay her anything, I have never paid, I am going to make up for that, I have made a will and I am going to leave her the bulk of my property, she deserved it for what she done for me and I didn't do much for her when she was a child. . . . Mr. Horton said: 'I expect the rest of them would be damned mad if they found it out.' "

We think the evidence amply supports the finding of the trial court that G. L. Horton did sign the will and that it was signed in the presence of witnesses as required by statute.

The third question propounded by appellant is: Was Orinda Garinger the principal beneficiary under the will of G. L. Horton?

One of the chief complaints under question 8 is that the court refused to find that Mrs. Garinger was the principal beneficiary and that such refusal was error.

While it is true there is no specific affirmative finding that Mrs. Garinger was the principal beneficiary, in finding IX we find that the trial court in enumerating statements made by G. L. Horton said: "In some of these statements, he gave as his reason for making Mrs. Garinger the principal beneficiary, the fact that she had given him such good care for so long a time," thus recognizing, as must this court from the terms of the will before us, that she was the principal beneficiary.

In view of such facts as will presently appear, we feel that the trial court's refusal to make a more specific finding was wholly immaterial.

Appellant's questions 4, 5 and 6 are based upon the trial court's refusal to find that the will was prepared by the proponent acting by and through her agent C. H. Houseworth, and at the time of the preparation of the will the proponent Orinda Garinger was the confidential agent of the testator, G. L. Horton.

The trial court found (finding IX): "While Mrs. Garinger was the agent of her father, in helping him to transact some of his business, she was not consulted about the will and made no effort to induce or persuade her father to make it, and the evidence does not show that in this respect or any other did she dominate over him."

Finding No. V, in part, reads: "In 1926, as shown by exhibits G and I, only 21 checks were signed by Mrs. Garinger for her father prior to the date of the will; but later she signed many other checks and other papers for him and on a few occasions he inquired her opinion as to a few farm leases and small loans. In none of these matters was he unduly persuaded by her, but as shown by the evidence, he gave but did not take advice and had a mind of his own." In the court's opinion it was stated: ".  .  . The farthest I could go would be the evidence shows Orinda Garinger and Horton acted somewhat in conjunction in business matters and she did handle business matters for him and assisted him with them, but as far as being the confidential agent, I think that is farther than I think the evidence shows.  .  .  ."

In finding VI the court states that "On December 28, 1926, when

he was 84 years of age, Mr. Horton went to C. H. Houseworth, the banker with whom he dealt, and in whom he had confidence, and stated that he wanted to make his will. . . ."

In *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, it was held as stated in the syllabus:

"The mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator and does not cast upon the beneficiary the burden of disproving undue influence. Those consequences follow only when the beneficiary has been actively concerned in some way with the preparation or execution of the will." (Syl. ¶ 8.)

Our statute (G. S. 1939 Supp. 59-605) contemplates something more than a mere confidential relationship. The trial court, in effect, found that Mrs. Garinger was not the confidential agent of her father and the evidence supports that conclusion.

Did the testator receive independent advice with reference to the execution of the will? The statute G. S. 1935, 22-214, now appearing as G. S. 1939 Supp. 59-605, provides:

"If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

If, under the facts, it appears that the will was not prepared by the sole or principal beneficiary in such will who at the time of writing or preparing the will was the confidential agent or legal adviser of the testator or who occupied at that time any other position of confidence or trust to such testator, then we think the question of independent advice is immaterial.

The court specifically found that the will was prepared by C. H. Houseworth, in whom the testator had confidence—that Mrs. Garinger was not consulted about the will and made no effort to induce or persuade her father to make it.

As it was found that Mrs. Garinger was not the confidential agent of the testator, it was unnecessary to decide the question as to whether the testator had independent advice. In *Keefe v. Kill*, 135 Kan. 14, 9 P. 2d 640, it is stated:

"Where a will is not written or prepared by the sole or principal beneficiary, the statute relating to independent advice (R. S. 22-214) is not applicable." (Syl. ¶ 2.)

See, also, *Klose v. Collins*, 137 Kan. 321, 20 P. 2d 494.

We conclude that the trial court's findings sufficiently covered the issues and that such findings were supported by sufficient competent evidence.

The question of undue influence is argued with reference to the testator receiving independent advice. We think the trial court's finding No. IX, which we have heretofore discussed and which is, we feel, amply supported by the evidence, disposes of this contention.

In appellant's brief appears the statement "The issue of mental incapacity on account of an insane delusion is in this case and was from the beginning and it was argued to the court."

The trial court found (finding No. VI):

". . . At this time, Horton was in good health, being unusually rugged physically, except for impaired sight. However, he was able to get about town without assistance and used a reading-glass when reading. Mentally, he was bright and alert. He showed much interest in local events and the news of the day, particularly in political affairs. He was also interested in the history of the Civil War and the pioneer days in Kansas, where he had settled shortly after that war. He had a good memory and a good grasp of business matters, and showed sound judgment and considerable ability in the management of his business affairs. He was able to, and did discuss all of these things intelligently and in a rational manner. He was a man of marked personality and strong character, firm and decided in his convictions, and not easily influenced."

In finding XI the court found that on the date the will was executed the testator was of sound mind.

Dr. L. M. Tomlinson testified: "Horton's mental condition was all right at that time and he was a firm man."

Mr. Marrs, a resident of Harveyville, who visited Horton quite frequently, testified: "Horton in 1926 was exceptional as to his mind and his manner of doing business and everything. . . . His memory was good."

Mr. T. J. Robinson, a resident of Harveyville for twenty-one years, testified: "In December, 1926, Mr. Horton was an especially smart man for his age; his memory was good."

There is much other evidence in the record to the same effect which we consider unnecessary to detail here. We think the findings as to mental capacity amply supported by evidence.

Appellant assigns as error the overruling of the motion for a new trial. With the exception of the fifth ground which is "newly discovered evidence," the grounds for this motion invoke the question of the propriety of various findings given and requested. These questions have been duly considered heretofore in this opinion.

The ground relating to newly discovered evidence was not argued in the brief and will therefore be considered abandoned. The motion for a new trial was properly overruled.

The judgment of the district court is affirmed.