No. 38,153

CORNELL UNIVERSITY, *Appellant,* v. ROBERT P. HOWARD and ELEANOR HOWARD, his wife, KATHERINE ROACH JACKSON and WINFIELD H. JACKSON, her husband, ROSALIE ROACH YOUNGBURG, and PAUL F. YOUNGBURG, her husband, *Appellees.*

(228 P. 2d 680)

Opinion filed March 10, 1951.

*Donald C. Martindell,* and *William D. P. Carey,* both of Hutchinson, argued the cause, and *Wesley E. Brown, Edwin B. Brabets, Robert J. Gilliland, John F. Hayes, C. William Miller* and *Robert C. Martindell,* all of Hutchinson, were with them on the briefs for the appellant.

*Roland H. Tate,* of Garden City, argued the cause, and *J. H. Jenson, James S. Jenson,* and *Corwin C. Spencer,* all of Oakley, and *Logan N. Green* and *Daniel R. Hopkins,* of Garden City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action to set aside a deed, to quiet title to real estate, for ejectment, and for an accounting for rents and profits. After joinder of issues the defendants moved for judgment on the pleadings. The appeal is from a judgment sustaining that motion.

The petition includes a first cause of action, a second cause of action, and a prayer for all the relief to which a plaintiff would ordinarily be entitled in an action of the kind above described. It is lengthy and in such form it cannot be easily summarized. For that reason, and because all allegations essential to the disposition of the issue raised by the instant appeal appear therein, a copy of the first cause of action set forth in such pleading, omitting an exhibit and certain averments to which we refer in summarized form, is appended to and made a part of this opinion.

The defendants' answer to the petition is also long. However, the appellate issue is such we are not concerned with many of its allegations and they need not be quoted at length. For present purposes it will suffice to say it expressly admits the allegations contained and set forth in paragraphs 1, 2, 3, 4, 5 and 8 of the petition and other allegations pertaining to the execution and recordation of the deed from The Northern Trust Company, as trustee, to plaintiff. It then denies generally all other allegations of the petition and asserts that the defendants are the owners of the real estate in question under and by virtue of a valid quitclaim deed executed and delivered to them by Fred H. P. Howard in his lifetime. Next it alleges that on the 21st day of June, 1946, the plaintiff, as to each of the four tracts of real estate described in the petition filed in the office of the register of deeds of Logan county and caused to be recorded in that office a certain affidavit, caveat, and statement, signed by and on behalf of the plaintiff only, a copy of each which statement reads:

"Fred H. P. Howard died in Chicago, Illinois on July 1, 1945, and the above described property constituted a part of the estate left by him. By the terms of his will, which was admitted to probate in the Probate Court of Cook County, Illinois, on September 4, 1945, all of his estate was devised and bequeathed to Cornell University, a New York Corporation.

"The undersigned is informed and believes:

"That prior to the death of said Fred H. P. Howard, he executed a deed purporting to convey the above described property, but such deed named no grantee;

"That said deed came into the possession of Leonard H. Roach, who has, since the date of death of said Fred H. P. Howard, inserted the name of a grantee or grantees therein without the consent of the undersigned;

"That any authority which the said Leonard H. Roach received from said Fred H. P. Howard to insert the name of a grantee or grantees in said deed terminated upon the death of said Fred H. P. Howard, and that said deed is null and void.

"The undersigned claims that it is the owner of said property as sole lega-

tee and devisee under the will of said Fred H. P. Howard and that said purported deed is void and ineffective to convey any title to the above described real estate.

"CORNELL UNIVERSITY

"By George F. Rogalsky

"Treasurer.

"((Corporate Seal))

"Attest:

"Robert B. Meigs, .

"Secretary."

Finally the answer charges that plaintiff failed and neglected for a period of more than thirty days after the date of the filing of such affidavits, caveats, and statements to commence an action or actions in a court of competent jurisdiction to enforce or establish its claims against and interest in the real estate described therein and that by reason of its failure to do so it is estopped, barred, and precluded from maintaining or prosecuting the instant action or any other action wherein and whereby it seeks to enforce or establish any claims against or interests in such real estate.

Following the overruling of a motion to strike all allegations from the answers respecting the affidavits, caveats, and statements the plaintiff filed its reply wherein it admitted it had filed such instruments as charged, conceded it had brought no suit to enforce the claims therein set forth within thirty days thereafter and denied that its failure to do so barred or estopped it from recovering the relief prayed for in its petition.

With issues joined as heretofore stated the defendants moved for judgment on the pleadings. In a summary way it can be said this motion, after reciting many of the facts set forth in the answer, is based upon the ground it affirmatively appears from the face of the foregoing pleadings plaintiff's action is barred by the provisions of G. S. 1935, 67-254, and that the trial court's action in sustaining it and in rendering judgment in favor of defendants and against plaintiff was based solely upon that premise.

Resort to the petition reveals allegations, which, under our decisions (See West's Kansas Digest, Pleading, § 350 [3]; Hatcher's Kansas Digest, Pleading, § 71), must be accepted as true for purposes of our review of the ruling on the motion for judgment on the pleadings and for such purposes only, to the effect the appellees claim title to and ownership of the real estate in question under and by virtue of a deed which (1) was executed and delivered by Fred H. P. Howard who was mentally incompetent,

as grantor, to Leonard H. Roach who, with full knowledge of that incompetency, procured and accepted the instrument and thereafter, without authority, inserted the appellees' names as grantees for his own use and benefit, at least so far as an undivided one-half interest in the real estate described in the deed was concerned, (2) was delivered, to the appellee grantees without consideration, in violation of the express conditions under which the instrument had been executed and delivered, to Roach who at the time of such delivery did not have and never had possessed authority to deliver such instrument to them as grantees, and (3) had been materially altered under conditions and circumstances which, if established, would constitute forgery. The petition contains other allegations which, if true, might vitiate the deed but we need not labor them as those to which we have referred are all that need be mentioned for present purposes.

The rule in this jurisdiction with respect to the status of a deed which has been acquired under the first set of conditions and circumstances heretofore noted is well established. Long ago in *Hospital Co. v. Philippi*, 82 Kan. 64, 107 Pac. 530, we held:

"A deed executed by an insane person to one who has knowledge of the mental incapacity of the grantor and who gives no substantial consideration for the property is an absolute nullity. It does not operate to revoke a valid will previously made by the grantor, and a devisee under the will has sufficient interest to justify him in maintaining an action against the grantee to declare the deed to be void, although there has been no prior disaffirmance of the deed or a tender back of the nominal consideration paid by the grantee." (Syl. ¶ 4.)

See, also, *Anderson v. Anderson*, 137 Kan. 833, 840, 22 P. 2d 471, where it is said:

". . . When a man who knows another to be insane sets about getting a deed from the insane person of the insane person's land, and succeeds, the court takes the land away from the clever person and restores it to the insane person's estate. Rescission as in cases of fraud is not required, and no statute of limitations commences to run against the insane person. So it may be said a deed procured under the circumstances stated is void, and devisees under the will of the insane person, made before the conveyance and while he was competent to make a will, are proper persons to bring an action to determine what appears to be an adverse interest created by the deed. (*Walter v. Julius*, 68 Kan. 314, 74 Pac. 157; *Hospital Co. v. Philippi*, 82 Kan. 64, 107 Pac. 530; *Jenkins v. Jenkins*, 94 Kan. 263, 146 Pac. 414; *Keefe v. Kill*, 135 Kan. 15, 9 P. 2d 640.)" (p. 840.)

There can be no question regarding the status of a deed or the title acquired under its terms when obtained under the set of con-

ditions and circumstances secondly mentioned, namely without valid delivery. The rule is there must be a delivery of such a deed before it can operate as a valid transfer of title. This, we may add, as between grantor and grantees, including heirs and devisees of the grantor in case of his death, is so under our decisions even though the deed as originally executed was conditionally delivered to a third person and by him delivered to the grantees in violation of the terms and conditions under which it might have been delivered. (See e. g., *In re Estate of Hulteen,* 170 Kan. 515, 227 P. 2d 112; *Burgin v. Newman,* 160 Kan. 592, 164 P. 2d 119; *Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313, and decisions cited at page 576 of the opinion; *Mundell v. Franse,* 143 Kan. 139, 53 P. 2d 811; *Stone v. French,* 37 Kan. 145, 14 Pac. 530, also 26 C. J. S., Deeds, 244 § 43[d]).

Nor can there be any doubt regarding the title acquired by persons who assert title and ownership to real estate under a forged deed.

Long ago in *Redden v. Tefft,* 48 Kan. 302, 29 Pac. 157, in accord with the universal rule (See 26 C. J. S., Deeds, 269 § 54[g]; 16 Am. Jur. 451, 452, §§ 26, 27) we held that a fabricated or forged deed confers no title or equities whatever upon the alleged grantee.

In passing, especially since appellees place great weight upon the fact their deed was filed for record sometime prior to the recordation of the deed obtained by appellant from the Northern Trust Company, as trustee, it should perhaps be stressed that a void deed passes no title and that the recording of such an instrument will not validate the deed or give the grantees named therein any greater title than they had prior to the time it was filed for record (*Stone v. French,* supra, 16 Am. Jur. Deeds 449 § 21; 26 C. J. S. 307 § 68).

Summarizing, what has been heretofore stated means that under the facts and applicable law the trial court held that under the provisions of G. S. 1935, 67-254, (now G. S. 1949, 67-254) the appellant was barred from maintaining the instant action because it had filed the statements heretofore mentioned and had failed to commence an action within thirty days to set aside the deed in question notwithstanding, under the facts pleaded in the petition, appellant at the time of the commencement of such action was the legal owner of such real estate and the appellees had never acquired any legal right, title, or interest therein. Otherwise and more drastically stated the force and effect of its decision is that, under

the conditions and circumstances just related, such statute must be construed as divesting the appellant of its title to the real estate and vesting that title in appellees even though, except for its provisions, they would never have been able to establish any title thereto under and by virtue of their void deed. Let us see.

Conceding, as appellees insist, G. S. 1949, 67-254, is to be regarded and construed as a special statute of limitation, there remains the all decisive question as to when its provisions become operative and are to be given force and effect. The answer to this question must be and is to be found in the statute itself. In clear, express, and unequivocal terms it provides "That whenever any person shall file in the office of register of deeds any affidavit, . . . purporting to set forth any claim against, . . . any real property *belonging to another,* . . . such claim, . . . shall, after expiration of thirty days from date of filing the same, no longer constitute any claim against, . . . such real property, unless within such time, the claimant shall begin an action in a court of competent jurisdiction to enforce such claim." (Emphasis supplied.) In our opinion this language limits application of the statute to cases where the statement filed purports to set forth a claim against real estate *which belongs to another* and excludes its operation in those where the ostensible owner files a statement of record wherein he gives notice that he is the absolute owner of real estate and that some third person is asserting title to or some interest in his property under and by virtue of a claim which is wholly void. This construction gives full force and effect to all language to be found in the statute whereas to construe it otherwise would wholly ignore the obvious meaning of the phrase "belonging to another" which, in construing the act in its entirety, we are compelled to assume was included within its terms with considered and deliberate legislative intent and purpose. It also eliminates constitutional objections, that otherwise construed, the statute by legislative fiat takes property of one person and vests it in another without due process of law.

The conclusion just announced means that under the conceded facts of the instant case the provisions of G. S. 1935, and 1949, 67-254, have no application and are not decisive of the rights of the parties. Therefore appellant's admission in its reply that it had filed the statement in question and failed to commence an action

within thirty days thereafter did not impair the issues of fact theretofore joined by the pleadings upon which a valid judgment might be based or make it clearly appear appellees were entitled to judgment. It necessarily follows the trial court erred in sustaining the motion for judgment on the pleadings and in rendering judgment for appellees on the theory appellant's failure to comply with the requirements of such statute barred and estopped it from maintaining its action.

In conclusion it should perhaps be added that so far as we have been able to determine there are only two decisions of this court wherein the statute in question was even indirectly involved. One of these *Glimac Oil Co. v. Weiner*, 150 Kan. 430, 94 P. 2d 309, was an action for damages for disparagement of title and is not in point. The other *Phoenix Joint Stock Land Bank v. Eells*, 158 Kan. 530, 148 P. 2d 732, was here on appeal from a ruling on a motion to set aside a judgment rendered in a real estate foreclosure action and was decided solely upon the basis the movant had shown no valid grounds for setting aside the judgment. It appears from the opinion in such case that the party making the motion had filed a statement some two years after the rendition of the judgment giving notice to all persons of his claims respecting invalidity of the judgment and notifying prospective purchasers that they were buying the land at their own risk and peril. However, although it must be conceded that by way of dictum the court made some comment respecting the force and effect of G. S. 1935, 67-254, it is clear from the opinion the decision refusing to set aside the judgment was not based upon the rights of the parties under its terms, and we do not regard it as furnishing a precedent for our decision in the case at bar. Appellees suggest there is some language in the dictum indicating a view contrary to the one just expressed with respect to when the provisions of the statute are applicable. Under the circumstances we are not disposed to labor the question. It suffices to say that if there were any language in such opinion susceptible of that construction it should be disregarded and is hereby disapproved.

The judgment is reversed.

## APPENDIX

### Amended Petition

COMES Now the Plaintiff, Cornell University, by its Attorneys, Martindell, Carey, Brown & Brabets, of Hutchinson, Kansas, and in compliance with the Court's Rulings on Defendants' Motion to Strike and to Make Definite and Certain, for its Amended Petition alleges and states:

1. That it is a Corporation, organized and existing under and by virtue of the Laws of the State of New York, with its principal office and post office address at Ithaca, New York; that it is a non-profit educational institution, engaged in literary, scientific, engineering and other research, supported largely by endowments and gifts.

2. That each and all of the Defendants are non-residents of the State of Kansas, and are residents of the State of Illinois; that Robert P. Howard and Eleanor Howard are husband and wife; Katherine Roach Jackson and Winfield H. Jackson are wife and husband, and Rosalie Roach Youngburg and Paul F. Youngburg are wife and husband.

3. That one Fred H. P. Howard, now deceased, was an alumnus of Cornell University; that at the time of his death he was a widower residing in Chicago, Illinois, and left no child or children, natural or adopted, nor any grandchild or grandchildren surviving him.

4. That said Fred H. P. Howard, died testate in Chicago, Illinois on the first day of July, 1945, and that his Last Will and Testament was duly admitted to probate and record in the Probate Court of Cook County, Illinois on the fourth day of September, 1945, and that The Northern Trust Company of Chicago, Illinois, which was named as Executor in said Will, was appointed and qualified as Executor of the Estate of said Fred H. P. Howard, Deceased, a copy of said Will is attached to the original petition filed in this Cause, marked Exhibit "A" and made a part hereof.

5. That said Will contained provisons in part as follows: (Here appears excerpts from the will of the decedent making The Northern Trust Company his executor and trustee with directions to that corporation to turn over to plaintiff by proper conveyances, after the death of the decedent's wife, all property real and personal remaining in his estate).

6. That Edith W. Howard predeceased the said Fred H. P. Howard, and upon the death of Fred H. P. Howard all of his property, of every kind and nature, passed to this Plaintiff, subject only to debts and expense of administration.

7. That said Estate has been fully administered and all debts and claims paid and this Plaintiff has succeeded to all of the property and rights of the said Fred H. P. Howard, deceased.

8. That on the 31st day of January, 1947, an authenticated copy of the Last Will and Testament of Fred H. P. Howard, deceased, and Order of Proof of Will and Granting Letters Testamentary under the Seal of the Clerk of the Probate Court of Cook County, Illinois was duly admitted to Probate and record in the Probate Court of Logan County, Kansas, at which time the Probate Court of Logan County, Kansas found that administration of the Estate of Fred H. P. Howard was unnecessary in the State of Kansas.

9. Plaintiff further states that prior to June 22, 1945, and at the time of his death, Fred H. P. Howard was the owner of, and in possession of the following described real estate situated in Logan County, Kansas, to-Wit: (Here follows legal description of four quarter sections of land).

10. Plaintiff further states that the records in the office of the Register of Deeds of Logan County, Kansas in Deed Record Book No. 45 at page 52, shows a warranty deed, purporting to be dated June 22, 1945, purporting to be signed by Fred H. P. Howard, and purporting to convey an undivided one-half interest in the above-described real estate to Robert P. Howard and to Katherine Roach Jackson and Rosalie Roach Youngburg, an undivided one-fourth interest each in the above-described real estate.

11. Plaintiff states that the said Deed was not filed for record until January 18, 1946, over six months after the death of said purported grantor, Fred H. P. Howard.

12. Plaintiff states that it does not know whether said deed was signed by Fred H. P. Howard, or not, and while said record above referred to shows that Fred H. P. Howard personally appeared before Mac J. Novak, a Notary Public, to acknowledge said Deed Plaintiff alleges that Fred H. P. Howard did not personally appear before said Notary Public and did not acknowledge said deed before or to said Notary Public.

13. Plaintiff states that if Fred H. P. Howard did sign said deed,

which fact Plaintiff does not admit, that said deed is null and void and of no force and effect for the following reasons, to-wit:

(a) There was no valid delivery of said deed in the lifetime of said Fred H. P. Howard, the purported grantor therein.

(b) At the time of the death of said Fred H. P. Howard, said deed was incomplete in this, that no grantee whatever was named in said Deed, the space left in said deed where the name of the grantee or grantees was to be inserted was wholly blank.

(c) The names of the Grantees, as they appear of record were inserted in the deed after the death of Fred H. P. Howard by Leonard H. Roach, or at his direction, who had no power or authority to insert said names in said deed, the agency of said party, if any such agency existed, and Plaintiff specifically denies that such agency ever existed, was terminated by the death of said Fred H. P. Howard.

(d) That there was no valid consideration given for said Deed.

(e) Leonard H. Roach never had authority from Fred H. P. Howard to insert the names of the grantees in said purported Deed.

(f) Said Fred H. P. Howard was of unsound mind at the time said purported deed was purportedly executed, and he was not mentally competent at said time to make, execute or deliver said purported deed.

(g) Said purported deed was procured and obtained by, through and as a result of undue influence exercised and practiced upon Fred H. P. Howard by Leonard H. Roach as follows:

Said Leonard H. Roach was the confidential friend and adviser of said Fred H. P. Howard, handling and dealing with the real estate of said Fred H. P. Howard continuously over a number of years up until the last time Mr. Fred H. P. Howard went to the hospital, and on the date the deed in question was supposedly signed, the said Leonard H. Roach went to the Chicago Osteopathic Hospital where Fred H. P. Howard was then confined and secured permission to take him from said hospital by representing he would take Mr. Howard out for a ride and some fresh air.

That at said time Fred H. P. Howard was mentally incompetent to transact any business or execute any deed or deeds, but notwithstanding said fact, said Leonard H. Roach secretly and clandestinely took said Fred H. P. Howard to the home of Fred H. P. Howard, got the papers and files of said Fred H. P. Howard and removed the same, getting everyone else out of the room where he had Fred H. P. Howard, and then and there overcame the feeble

and incompetent mind of Fred H. P. Morgan and had him sign not only the deed in question, but also various other deeds affecting all of, or an interest in fourteen (14) other quarter sections of land located in South Dakota, North Dakota, Montana and Gove County, Kansas, and that none of the deeds had the name of any grantee written therein at the time they were supposedly signed, and the said Leonard H. Roach, at said time represented that the names of the grantees were left blank in all of said deeds to facilitate or make easier the selling of said land, but that at said time said Fred H. P. Howard did not know what he was doing and did not realize he was signing a deed or deeds.

That said Leonard H. Roach had all of said deeds prepared in advance by his Secretary, Adda M. Craig, before he had had any talk with Fred H. P. Howard about executing any deeds, or who the grantees in said deeds would be.

That said Leonard H. Roach, took advantage of his confidential relationship with Fred H. P. Howard, and later, and after the death of Fred H. P. Howard, filled in the names of two of his daughters in the deed in question and all the other deeds, but for his own benefit, insofar as any interest of his daughters in said land was concerned.

(h) The deed in question to the Logan County, Kansas land, and all the other deeds were dated on a different day from the day on which they were supposedly signed, and were not dated at the time they were supposedly signed, and were procured by false and fraudulent representations made by Leonard H. Roach that the names of the grantees were omitted from said deeds for convenience in selling the lands therein described, when at the time Leonard H. Roach intended to insert the names of his daughters in each of said deeds, without any consideration being paid therefor.

(i) The deed in question to the Logan County, Kansas land was materially altered after it was supposedly signed by including an additional land description in said deed, which was not in said deed when it was supposedly signed by Fred H. P. Howard.

14. Plaintiff further states that after the death of Fred H. P. Howard, and after his estate was settled, that it procured from The Northern Trust Company, as Trustee of the Fred H. P. Howard Estate, a Quit Claim Deed to the above described real estate in Logan County, Kansas, which deed was filed for record in the office of the Register of Deeds of Logan County, Kansas on the 23rd day

of August, 1947, and duly recorded in book 45 at page 249 in said office.

15. Plaintiff further states that by reason of all the facts aforesaid it has succeeded to all of the rights of Fred H. P. Howard to bring this action to set aside the deed hereinbefore described which was recorded in book 45 at page 52 in the Office of the Register of Deeds of Logan County, Kansas.

16. Plaintiff further states that said Fred H. P. Howard left no personal property in the State of Kansas, and that all debts of his estate have been paid, and there is in fact no reason for administration of his Estate in the State of Kansas.

17. Plaintiff further states that the determination of questions involved in this action are not necessary to make final settlement and distribution of the Estate of Fred H. P. Howard, deceased; that there is no dispute among or between heirs or devisees or legatees as such under the Will of said Fred H. P. Howard, deceased, or any question of descent or distribution of the property hereinbefore specifically described, in this action, and the determination of the questions involved herein would not alter or affect the final settlement and distribution of the Fred H. P. Howard Estate, said Estate having been settled in the Probate Court of Cook County, Illinois, and Defendants are not in any way interested in the Estate of said Fred H. P. Howard.

18. Plaintiff states that by reason of all the facts aforesaid, it is entitled to have the deed hereinbefore described which was recorded in book 45, page 52, in the office of the Register of Deeds of Logan County, Kansas, cancelled, set aside and held for naught.