No. 40,872

In the Matter of the Estate of Bertha M. Guest, Deceased. In the Matter of the Estate of Luther W. Guest, Deceased. (Consolidated.) THE FIRST PRESBYTERIAN CHURCH OF NOWATA, OKLAHOMA, a Corporation, *Appellant,* v. CARL A. HAMMEL, Executor of the Last Will and Testament of Bertha M. Guest, Deceased; CARL A. HAMMEL, Admr. C. T. A. of Luther W. Guest, Deceased; HELEN HAMMEL HENRY and HELEN FEIST, *Appellees.*

(324 P. 2d 184)

Opinion filed April 12, 1958.

*John Berglund,* of Clay Center, argued the cause, and *David H. Heilman,* of Council Grove, *Owen S. Samuel,* of Emporia, and *Arthur Meyer,* of Nowata, Oklahoma, were with him on the briefs for the appellant.

*H. L. Sheppeard,* of Clay Center, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This appeal is from a judgment admitting to probate the separate wills of Luther W. Guest and his wife, Bertha M. Guest, who died residents of Clay County, and denying probate of an alleged lost or destroyed joint and contractual will alleged to have been formerly executed by them.

The Guests formerly lived in Nowata, Oklahoma, and came to Clay Center in about 1915, where they owned and operated a dry goods store. They were people who stayed pretty much to themselves, but through the years were extremely faithful and devoted members of The First Presbyterian Church of Clay Center. They taught in the Sunday School and held various positions in the church and its organizations. The Guests had no children but were very fond of Helen Hammel Henry, a daughter of the Carl A. Hammel family who were friends and neighbors. Luther and Bertha were not the demonstrative type of people and their admiration for Helen was exhibited by no particular outward show of affection.

In 1948 Luther consulted with W. M. Beall, an attorney of Clay Center, and Mr. Beall prepared a will for him which devised and bequeathed all of his property to his wife Bertha, absolutely.

Prior to his death on March 20, 1955, Luther had been a patient for several months at a hospital in Clay Center. During this period the responsibility and management of the business fell upon Bertha and, it proving quite burdensome, the store was sold on or about January 1, 1955.

Shortly after Luther's death Bertha brought his will to Mr. Beall in order to commence proceedings for its probate. Following some discussion, and in view of the fact Bertha was the sole heir-at-law, it was decided not to offer the will for probate, and Luther's securities and other assets were later transferred to Bertha's name.

In June, 1955, Bertha came to Mr. Beall's office and told him she wanted to draw her will. In this conversation she told him that she wanted to leave her property situated in Oklahoma to her cousin Helen Feist, and that she desired to leave all of her Kansas property to Helen Hammel Henry, of whom both she and Luther were very fond. Accordingly, Mr. Beall prepared a will disposing of her property as indicated, and Bertha executed it.

A few days later Mr. Beall, having realized that her will actually did not dispose of property located elsewhere than in Oklahoma or Kansas, advised Bertha of the fact and suggested that her will be rewritten to cover any such property. She approved, and told him she wanted any such property to go to Helen Hammel Henry. Accordingly, Mr. Beall drew a new will which left all property situated in Oklahoma to Bertha's cousin, Helen Feist, and all other property to Helen Hammel Henry. Bertha executed this new will, and the old one, at her direction, was destroyed. Carl A. Hammel, father of Helen, was named executor thereof without bond.

Bertha died on November 14, 1955. She was survived by no relatives closer than first cousins, none of whom lived in or near Clay Center. A few days later Mr. Hammel, named as executor, filed a petition to probate her will. A cousin living in Council Grove filed written defenses attacking the will on a number of grounds, among them being that as of the date of its execution and for some time prior thereto Bertha was in very poor physical health and mentally incompetent, and that the devise and bequest of a considerable portion of her estate to Helen Hammel Henry was the result of the undue influence, pressure, contrivance and coercion on the part of Carl A. Hammel, her father.

Following a hearing thereon the probate court admitted Bertha's will to probate.

It appears that about this time rumors were prevalent that Luther's will devised and bequeathed his property to The First Presbyterian Church of Clay Center. To set these reports at rest Helen Feist and Helen Hammel Henry, the beneficiaries under Bertha's will, petitioned the probate court for an order admitting Luther's will to probate. The invalidity of his will also was asserted by the opposition.

During the pendency of the appeal to the district court from the order admitting Bertha's will to probate, and of the hearing of the petition to admit Luther's will to probate, the opposition purportedly received information that a former practicing attorney of Clay Center had prepared a joint and contractual will for Luther and Bertha in 1942 or 1943, by the provisions of which they had devised and bequeathed, after the death of both, all of their property equally to The First Presbyterian Church of Nowata, Oklahoma, and The First Presbyterian Church of Clay Center. Pleadings were filed in Luther's estate by the Nowata church setting up this alleged joint and contractual will, a copy of which was never found or produced. After a full hearing thereon Luther's will of 1948 was admitted to probate and the petition to establish the alleged lost or destroyed joint and contractual will was denied.

From these orders the Nowata church appealed to the district court. The Clay Center church did not appeal and is in no way interested as a party litigant in this controversy.

Pursuant to the provisions of G. S. 1949, 59-2225, the appeals and all questions pertaining to the validity of the several wills were consolidated for trial in the district court. At the conclusion thereof the court made extensive findings of fact and conclusions of law, the gist of which was that Luther's will of 1948 and Bertha's will of 1955 were upheld and admitted to probate, and the petition to admit the alleged lost or destroyed joint and contractual will of 1942 or 1943 was denied.

From this judgment The First Presbyterian Church of Nowata has appealed.

Although appellant submitted 114 suggested findings of fact and 55 suggested conclusions of law to the trial court, and the abstracts and briefs in this case contain 285 pages, actually there is only one basic question involved—and that it whether the ultimate finding with respect to the three wills is supported by competent and substantial evidence. Other than what already has been related as to

the factual background of the matter, we see no necessity to detail the voluminous evidence and arguments touching the various aspects of the case.

With respect to Luther's will of 1948, the court found and held that it was duly executed in accordance with law; that the testator was of sound and disposing mind and memory and not under any restraint or undue influence, and that by its terms Bertha was devised and bequeathed all of testator's property, absolutely; that such will specifically revoked any and all previous wills, and that it should be allowed and admitted to probate.

These findings and order are fully supported by evidence.

With respect to Bertha's will of 1955, the court found and held that it effectively revoked any and all wills previously made by her; that there was no evidence whatsoever that anyone unduly influenced her in the making of her will; that she possessed testamentary capacity and was under no undue influence or legal restraint whatsoever, and that such will should be allowed and admitted to probate.

These findings and orders are likewise fully supported by evidence.

Some contention is made concerning the fact Bertha allegedly had no independent advice in the preparation and execution of her will, because the scrivener thereof was at the time the attorney for Carl A. Hammel, father of Helen Hammel Henry, one of the two beneficiaries.

We find no merit in this contention. In the first place, the evidence shows clearly that Bertha knew her own mind and how she wanted to dispose of her property. Neither of the beneficiaries had anything whatsoever to do with the preparation of her will. The "independent advice" statute (G. S. 1949, 59-605) simply has no application to the facts. (*Flintjer v. Rehm,* 120 Kan. 13, 241 Pac. 1087; *In re Estate of Horton,* 154 Kan. 269, 118 P. 2d 527; *In re Estate of Schippel,* 169 Kan. 151, 218 P. 2d 192, and *In re Estate of Arney,* 174 Kan. 64, 69, 254 P. 2d 314.)

With respect to the alleged lost or destroyed joint and contractual will, the evidence established, and the court found, that the scrivener thereof testified from memory that in 1942 or 1943 he drew a joint will for Luther and Bertha in which they gave the survivor of them all of their property for life; that upon the death of the survivor all remaining property was devised and bequeathed to The

First Presbyterian Church of Clay Center and appellant, The First Presbyterian Church of Nowata, equally; that the scrivener did not recall that the testators used the word "contractual" when they requested him to prepare their will; that the original of this will was placed in an envelope and was taken by the testators when they left his office; that it was never seen again by the scrivener; that the office copy thereof which was retained by him had since been destroyed; that diligent search had been made for such alleged joint will since Bertha's death but it had not been found; that there was no evidence such alleged will remained unrevoked; but, on the contrary, there was much evidence leading to the inference of its revocation; that there was no evidence that appellant church, through its officers or trustees, knew of such alleged joint will or that it had in any way changed its position in reliance thereon prior to the time Luther executed his separate will in 1948 and prior to Bertha's death in 1955, and that when Luther and Bertha executed their separate wills in 1948 and 1955, respectively, they rescinded the contract, if any, contained in the alleged 1942 or 1943 lost or destroyed joint will.

Our statute, G. S. 1949, 59-2228, provides:

"No lost or destroyed will shall be established unless it is proved to have remained unrevoked, nor unless its provisions are clearly and distinctly proved. When such will is established the provisions thereof shall be distinctly stated, certified by the court, and filed and recorded. Letters shall issue thereon as in the case of other wills."

The court's conclusion of law with respect to this matter was:

"1. This Court concludes as a matter of law that the alleged joint, contractual and mutual will has not been proved to have remained unrevoked, nor its provisions clearly and distinctly proved to the extent this Court could say it could re-write the same reflecting exactly what the parties had included in that instrument executed fourteen or fifteen years ago, where neither the original nor a carbon copy was preserved, and the provisions were recited from memory only of the scrivener of the instrument. The alleged lost, joint contractual will of Luther W. Guest and Bertha M. Guest, both deceased, should not be admitted to probate nor its provisions enforced as a contract."

It is contended the alleged joint and contractual will is enforceable by appellant as a third party beneficiary for whose benefit it was made, and that the court erred in not so holding.

One short answer to this argument is that before any question of enforcement becomes pertinent the contract (here the will) must first be established. By the plain unambiguous wording of

the statute, *supra*, no lost or destroyed will shall be established unless it is proved to have remained unrevoked nor unless its provisions are clearly and distinctly proved. Appellant simply failed to convince the trial court as to these matters. Time after time, in fact, every month, this court is called upon to repeat the familiar rule of appellate review to the effect that where findings are attacked for insufficiency of the evidence this court's power begins and ends with a determination as to whether there is any competent substantial evidence to support them; that it has no power to judge the value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom, and that even though there is evidence to support a contrary finding, nevertheless, a finding based on competent substantial evidence will not be disturbed on appeal. For a thorough discussion of this proposition we call attention to what was said in *Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057.

The alleged lost or destroyed joint and contractual will not having been established in accordance with the mandate of the statute, we are in no way concerned with its alleged provisions or the claimed rights of appellant thereunder.

Various contentions are made concerning questions of evidence and other matters occurring during the trial. All have been examined and considered but require no discussion. An examination of the entire record in this case discloses nothing approaching reversible error, and the judgment is therefore affirmed.

FATZER, J., concurring, being of the opinion that the testimony of the scrivener of the joint and contractual will of Luther W. and Bertha M. Guest, and that of his secretary who assisted in the preparation of that will clearly and distinctly prove the execution and terms of the joint and contractual will. No evidence was offered by the appellees to contradict that testimony, and in my judgment that evidence was sufficiently clear, distinct and convincing in every respect to permit the trial court to certify to its provisions pursuant to G. S. 1949, 59-2228. However, I agree that there was no evidence the joint and contractual will of the Guests remained unrevoked, and as stated in the majority opinion, there was much evidence leading to the inference that it was revoked.

JACKSON, J., not participating.