No. 44,129

Denison Mutual Telephone Co. and Wilbur T. Martin; Mayetta Mutual Telephone Co. and Charles Renfro, Jr., *Appellants,* v. Howard Kendall and A. L. Wheeler, d/b/a Denison Telephone Co. and Mayetta Telephone Co., *Appellees.*

(403 P. 2d 1011)

Opinion filed July 10, 1965.

*Wayne M. Stallard,* of Onaga, argued the cause, and was on the brief for the appellants.

*Thomas E. Gleason,* of Ottawa, argued the cause, and *Jules V. Doty,* of Ottawa, and *Hollis B. Logan,* of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

Wertz, J.: This is an appeal instituted on behalf of the Denison Mutual Telephone Company and the Mayetta Mutual Telephone Company by and through their respective presidents, Wilbur T. Martin and Charles Renfro, Jr., plaintiffs (appellants), seeking equitable rescission of written contracts for the sale of the companies on the ground of alleged false representations made by Howard Kendall, defendant (appellee), in the purchase of the property.

Both actions were consolidated and tried to the district court. The court made findings of fact and conclusions of law and entered judgment in favor of the defendant, from which plaintiffs appeal.

The pertinent facts may be summarized as follows: In February

1962, J. M. Caplinger, acting as attorney for both Mayetta Mutual and Denison Mutual, commenced negotiations with Kendall for the sale of the companies. Negotiations continued until March 29, 1962, at which time Mayetta Mutual, through its officers, entered into a contract with Kendall whereby he agreed to purchase all properties owned by the company and to assume responsibility for the operation and maintenance of the telephone exchange at Mayetta. On June 1, 1962, a similar contract was executed between the Denison Mutual Telephone Company and Kendall. All of the negotiations which lead to the sales took place between Kendall and Caplinger, who drafted both contracts.

Prior to executing the contracts, Kendall contacted an accounting firm, Shumway J. Bird & Co., for the purpose of obtaining a loan to make the purchases. He subsequently received through the mail a check in the amount of $1,000 from Shumway Bird, and two checks in the amounts of $1,000 and $8,000 from A. L. Wheeler, an attorney who maintains law offices in Washington, D. C. Kendall used these funds to pay for the exchanges.

Subsequent to purchasing the exchanges Kendall filed with the state corporation commission applications asking for approval of the sales. After a hearing held on June 25, 1962, the commission approved the sales, and issued an order authorizing Kendall to operate a public telephone utility in each exchange area. On June 20 each company executed and delivered to Kendall a bill of sale and a warranty deed conveying all assets except cash on hand, and about July 1, 1962, Kendall assumed operation of both exchanges.

Sometime during 1962 Kendall also commenced negotiations for a loan with Stromberg-Carlson, a division of General Dynamics Corporation, to cover acquisition costs of the Mayetta and Denison exchanges and to finance conversion of each exchange to the dial system. These negotiations culminated in a letter of commitment on May 2, 1963, which was subsequently extended to December 1, aggregating a total amount of $215,000, $180,000 of which was to be used to defray the costs of acquiring and rehabilitating the exchanges. The letter of commitment, however, expired, and the record indicates that as of July 22, 1964, Kendall did not have a loan commitment to finance conversion of the exchanges.

During the negotiations with Caplinger, Kendall represented that he was purchasing the exchanges as an individual and would personally assume responsibility for their operation and mainte-

nance. However, on December 18, 1962, Caplinger was called by Wheeler and informed that Kendall had used Wheeler's money to make the purchases and that Wheeler was, in fact, the owner. Caplinger was unable to contact Kendall until December 27, at which time Kendall indicated he considered the funds advanced by Wheeler to be a loan and that he was meeting his accountant the next day in Wichita to clear up the matter. Thereafter, Kendall and Wheeler entered into a compromise settlement, whereby Kendall agreed to pay Wheeler $12,500 for his claim to beneficial ownership of the exchanges. Wheeler received the $12,500 payment the following May or June.

On January 16, 1963, plaintiffs mailed Kendall a notice of rescission for each sales contract and offered to tender back the purchase price of the two exchanges. They asked Kendall to return the assets of the exchanges so as to restore all parties to the status existing prior to the execution of the contracts, but he refused.

Plaintiffs commenced the instant action by filing their amended petitions on March 26, 1963, alleging in substance that Kendall had falsely represented that he was purchasing the exchanges as an individual and would move into the Mayetta-Denison area so as to provide local ownership, supervision and maintenance. It was further alleged that Kendall had, in fact, purchased the exchanges for an unknown third party, A. L. Wheeler, who was also named as a party defendant in the petitions.

Kendall's answers contained specific denial of the alleged false representations. To each petition Wheeler filed an answer in which he disclaimed any right, title or interest in or to the exchanges.

On the issues as joined, the trial court entered findings of fact on July 22, 1964, among which were:

"11. While the evidence discloses that A. L. Wheeler advanced funds through Shumway Bird & Company to defendant Kendall for the purpose of such exchanges, and the court so finds, there is no clear and convincing evidence that defendant Kendall knew or should have known that Wheeler intended to be the purchaser himself. Defendant Kendall testified that he had had no contact whatsoever with nor was he acquainted with Wheeler at the time of the acquisition of plaintiff exchanges. Such testimony was not refuted by any evidence of plaintiffs and the Court so finds such to be the fact.

"12. The Court finds that defendant Kendall did represent that he would move into the area personally during the conversion to dial system and that he would personally supervise such. While there was some evidence offered tending to show that defendant Kendall had made statements to the effect that he and his wife desired to move back into this area, there was not the clear and

convincing evidence necessary from which the Court could find a false representation in this regard."

Upon entering conclusions of law consistent with its findings, the court specifically concluded that plaintiffs had failed to establish by a preponderance of the evidence the alleged false representations.

Plaintiffs contend there was insufficient evidence to support the trial court's finding that Kendall did not falsely represent he was purchasing the exchanges as an individual.

Preliminary to discussing this contention, it should be noted that in an action springing from alleged false representations, an appellate court, by force of circumstances usually attendant upon a trial of such an action, must give considerable weight to the findings and conclusions of the trial judge who had an opportunity to observe the demeanor of the principals on the witness stand. Moreover, it has long been settled that if there is present in the record substantial competent evidence in support of the findings of the trial court, it is beyond the province of this court to disturb the judgment on appeal. (*Fine v. Neale Construction Co.*, 186 Kan. 537, 352 P. 2. 404; *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122.)

Kendall testified his first conversation with Wheeler was during the latter part of October or the first part of November 1962—four or five months after the sales transactions were completed. A careful search of the record discloses no evidence whatsoever to refute the above testimony, nor is there anything to indicate Kendall had knowledge of Wheeler's existence prior to Kendall's assuming operation of the exchanges. The first reference in the record concerning Wheeler relates to a check mailed by him to Kendall which was dated July 2, 1962, in Washington, D. C., approximately one month after the second sales contract was executed. In view of the foregoing, we have no hesitation in holding there was ample evidence to support the trial court's finding.

Plaintiffs also contend the trial court's finding that Kendall did not falsely represent he would move into the Mayetta-Denison area was contrary to the evidence. We do not feel compelled to detail all of the evidence; it will suffice to say that Kendall's own testimony was sufficient evidence to support the court's finding. A general finding determines every controverted question of fact on which substantial evidence was introduced and raises a presumption that the trial court found all facts necessary to support the judgment. It is the duty of the trier of the facts, not the appellate court, to weigh conflicting evidence; and the appellate court, in

determining the sufficiency of evidence to support findings of fact, is required to view all testimony in the light most favorable to the prevailing party. (*Kramer v. Farmers Elevator Co.*, 193 Kan. 438, 393 P. 2d 998; *International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, 501, 393 P. 2d 992.) This court is concerned only with whether or not there was any substantial competent evidence to support the trial court's finding and conclusion that plaintiffs failed to sustain the burden of proof that Kendall made any false representations to justify the equitable rescission of the contracts of sale in question, and we find there was.

It is also contended by the plaintiffs that the trial court erred in refusing to consider whether or not Kendall had properly complied with the orders and schedules of the state corporation commission. They maintain that the telephone utility service in the Mayetta-Denison area was inadequate and that certain rates charged by Kendall were excessive. A short answer to this contention is that plaintiffs' alleged grievances must first be addressed to the corporation commission.

In adopting the public utilities act, K. S. A., chapter 66, the state reserved the right to regulate the public utility business. The state corporation commission is given full power, authority and jurisdiction to regulate service, prescribe rates and order a continuance of service at such prescribed rates. (*City of Wilson v. Electric Light Co.*, 101 Kan. 425, 166 Pac. 512; *Kansas Power & Light Co. v. City of Great Bend*, 172 Kan. 126, 130, 131, 238 P. 2d 544.) Thus, parties who complain that a public utility has failed to furnish adequate service or has charged excessive rates should invoke the relief provided by the public utilities act before resorting to the courts. (*City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, 178 Pac. 438.)

Other contentions raised by plaintiffs have been examined and found to be without merit sufficient to justify reversal of the judgment. The judgment of the trial court is affirmed.

FATZER, J., dissents.