No. 44,651

THE UNITED TRUST COMPANY, *Plaintiff-Appellant*, v. DELBERT V. PYKE, Administrator, *Defendant-Appellee*. DELBERT V. PYKE, Administrator, *Plaintiff-Appellee*, v. THE UNITED TRUST COMPANY, *Defendant-Appellant*. (In the Matter of the Estate of Della Pyke, Deceased.) (In the Matter of the Estate of Isaac Lesher Pyke, Deceased.)

(427 P. 2d 67)

ALBERT B. FLETCHER, JR., judge. Opinion filed April 25, 1967.

*James P. Mize,* of Salina, argued the cause, and *John H. Lehman,* of Abilene, was with him on the briefs for appellant.

*R. H. Royer,* of Abilene, argued the cause, and *Paul H. Royer* and *James C. Johnson,* of Abilene, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal involves claims of inheritance, joint tenancy survivorship, and proceeds under life insurance contracts in the estates of two decedents, Isaac Pyke and Della Pyke, husband and wife, and to collect damages for the wrongful death of Della by the alleged willful and intentional shooting of her by Isaac, who then committed suicide.

Actions were filed by the administrators of both estates in the probate and district courts of Dickinson County to obtain an award and distribution of the property claimed to belong to the respective decedents' estates. Claims filed in the probate court were transferred to and consolidated with those filed in the district court. (K. S. A. 59-2402a and b.) A trial was had by the district court which made findings of fact, and rendered judgment in favor of Delbert V. Pyke, administrator of Isaac's estate. The plaintiff, The United Trust Company, administrator of Della's estate, has appealed.

Isaac and Della Pyke had been married for many years and resided in Abilene; they were childless, and both died intestate. Isaac was 85 years of age and was of sound mind and body. Della was 79 years of age and was of sound mind, but was physically impaired in that she had chronic leukemia (cancer of the blood), and adeno carcinoma (cancer of the throat glands) for which she had been hospitalized prior to her death. She also had a left facial paralysis preventing her closing her eyelid and a blindfold was placed over her eyes when she slept. Her personal physician and two doctors testified they could not say with reasonable medical certainty what effect, if any, her physical impairments had on her normal life expectancy.

Isaac was last seen alive about 7:30 p. m., September 5, 1962, when he walked to the home of a neighbor, Clara Rhodes, and asked her to come by the next morning and drive Della and him to a doctor in Salina. Isaac told Clara "she needn't knock," but to "come right in." When Clara arrived the following morning, September 6, 1962, at about 7:50 a. m., she called to Isaac. Receiving no answer, she went into the Pyke home and found Isaac's body lying on the kitchen floor. She immediately telephoned the police, and waited outside until they arrived. The police found both Isaac and Della dead at about 8:00 a. m. on September 6, 1962.

On October 4, 1962, Della's estate was admitted to probate, and

the plaintiff-appellant, The United Trust Company, was appointed administrator. On June 28, 1963, the plaintiff filed identical petitions in the probate and district courts, alleging that Della survived Isaac and that all the property (their residence, certain jointly and separately owned stocks, bonds and checking accounts, and various life insurance proceeds) should be awarded and distributed to the heirs at law of Della. It was also alleged that in the event the time of death could not be established, all of the property should be awarded and distributed in accordance with the simultaneous death statute. (K. S. A. 58-701, *et seq.*) A second cause of action alleged that Della's death was the result of the willful acts of Isaac and that his estate was liable to Della's estate in the amount of $25,000.

On October 5, 1962, Isaac's estate was admitted to probate and the defendant-appellee, Delbert V. Pyke, was appointed administrator. The petition for administration alleged that Isaac was unmarried at the time of his death; that his wife, Della, had predeceased him, and that his only surviving heirs at law were his brothers and the nieces and nephews stated herein. On July 3, 1963, Delbert V. Pyke, as administrator of Isaac's estate, filed identical petitions in the probate and district courts, repeating the allegation that Isaac had survived the death of Della, and praying that the property in issue be surrendered and awarded to the administrator of Isaac's estate.

It is unnecessary to here state the titles and docket numbers of the cases filed, or those transferred to the district court, except to say they were ordered consolidated and set down for pretrial conference. On June 29, and 30, 1965, the consolidated cases were tried by the district court which rendered judgment that the plaintiff take nothing by its petition, alleging two causes of action; that the relief prayed for Delbert V. Pyke, administrator, be allowed; that Isaac was the only heir at law of Della, and that Della's estate be closed forthwith.

The evidence disclosed the following: When found, both corpses were in rigor mortis, which most often occurs about four hours after death. Death is the complete cessation of all vital functions without possibility of resuscitation. There was no evidence of the time of the shooting of either Isaac or Della, and it could have occurred at any time between approximately 8:00 p. m., September 5, and 3:50 a. m., September 6, or even later. The examining coroner stated in the death certificates that Della had died at about 12:30

a. m., on September 6, and that Isaac had died at about 1:00 a. m., on that date, but later crossed out those times, and testified he had only assumed them.

Pictures of the condition and positions of both bodies were introduced in evidence and included in the record on appeal. Della's body was in her bed at the front of the home. There were five bullet wounds in her head; three in the forehead and two above the left ear. The mattress and bedding were soaked with blood and there were splotches of blood on the wall at the head of the bed. The night-light was on in her bedroom, as were the lights in the kitchen. Isaac's body was lying on the kitchen floor about 35 to 40 feet from Della's bedroom, with one bullet wound in his forehead and there was blood on the floor in and about the area surrounding his head. Lying on the floor next to Isaac's feet, was an H & R .22 caliber revolver with one empty cartridge and eight live cartridges in its cylinder. There was a partially filled box of .22 caliber cartridges on the kitchen table, and approximately three feet from Isaac's head were five expended .22 caliber cartridges in the kitchen wastebasket.

Autopsy examinations of the head and brain of each corpse were made by Dr. C. J. Weber, a pathologist, and he made autopsy reports which were introduced in evidence. The reports show, and the court found, the cause of Della's death was the five bullets recovered from her brain. The bullets were checked ballistically by the Kansas Bureau of Investigation and its report expressed the opinion they had been fired by the gun found near Isaac's feet. The revolver was identified as Isaac's gun.

The autopsy reports showed the cause of Isaac's death was the single bullet wound in his head. Both corpses had deep powder burns at their bullet holes.

The chief of police testified the police could find no evidence of movement of Della's body after she was shot, and the medical experts agreed she would have been unconscious after any one of the five bullets entered her head; that she would have died almost instantaneously, and could not have shot herself.

There was evidence the police officers made a careful search of the house and premises and could find no indication any third person had been in the house the night before. A considerable amount of money present in the home had not been disturbed.

In view of the foregoing, the district court found that Isaac

shot Della sometime between 8:30 p. m. on September 5, 1962, and 7:50 a. m. on September 6, 1962, and that Della predeceased Isaac. It also concluded the simultaneous death statute (K. S. A. 58-701, *et seq.*) was not applicable, and rejected the theory of constructive trust, finding no foundation for it in the case law or the statutes of Kansas. In a post-trial motion, the plaintiff requested the district court to expressly find that Isaac intentionally inflicted the fatal injuries upon Della, without legal justification, but the court specifically refused to make such finding.

It is contended the plaintiff's appeal was untimely perfected and should be dismissed. The state of the record is such that a clear-cut issue is not presented, requiring a discussion of the point, and we proceed to the merits.

The plaintiff first contends, *inter alia,* that a part of the property in question was that of Della; that Isaac's intentional shooting of five bullets from close range into her head and brain cannot be construed as anything other than he deliberately intended to kill her; that during the night when Isaac committed his crime, Della had the prospect of a future existence of which the duration was not less undefined than was that of Isaac; that by his felonious act, Isaac interrupted the course of nature and caused Della's untimely death, and, but for his criminal act, Della might have outlived Isaac; that where, as here, there has been an intentional and deliberate killing, and with respect to all property benefits arising from the victim's estate, the law presumes the victim survived his killer, which presumption is not rebuttable, and the felonious killing is set at naught so as to prevent the killer from profiting from his own crime and depriving innocent distributees of their share of the victim's estate.

The plaintiff candidly concedes the contention was not presented to, or ruled upon by the district court, and it is now being made for the first time. In its brief it states:

"In its judgments, the trial court overlooked the foregoing presumption. In fairness to the trial judge, we would like to add that it was not called to the court's attention. We did not know of its existence until after the motion for new trial was overruled."

Under such circumstances, we are in no position to decide the point on its merits. This court has repeatedly held it will not consider an issue which has not been presented to the district court and is raised for the first time on appeal. (*Hardcastle v. Hardcastle,* 131

Kan. 319, 327, 291 Pac. 757; *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122; *Call v. State*, 195 Kan. 688, 408 P. 2d 668, cert. den. 384 U. S. 957, 16 L. Ed. 2d 552, 86 S. Ct. 1581; *Tate v. State*, 196 Kan. 435, 437, 411 P. 2d 661; *State v. Blair*, 197 Kan. 693, 421 P. 2d 32; *Scammahorn v. Gibraltar Savings & Loan Assn.*, 197 Kan. 410, 416 P. 2d 771.)

It is next contended the district court erred (1) in finding Della predeceased Isaac, and (2) in refusing to find that Isaac intentionally and willfully inflicted the fatal injuries upon Della, without excusable justification. In reviewing findings of fact of a district court and its refusal to make requested findings, this court does not weigh the evidence and is concerned only with the question whether the findings made are sufficient to support the judgment, and whether there is substantial evidence to support the findings made; it is not concerned with evidence which, if believed, would support contrary findings. (*Kuhn v. Kuhn*, 112 Kan. 155, 210 Pac. 343; *In re Estate of Horton*, 154 Kan. 269, 118 P. 2d 527; *Fine v. Neale Construction Co.*, 186 Kan. 537, 352 P. 2d 404; *In re Estate of Shirk*, 194 Kan. 671, 401 P. 2d 279; *Denison Mutual Telephone Co. v. Kendall*, 195 Kan. 227, 403 P. 2d 1011; *Newcomb v. Brettle*, 196 Kan. 560, 413 P. 2d 116.) If, upon review of the record, there is substantial competent evidence to support the findings of the district court, it is beyond the province of this court to disturb the judgment on appeal. (*In re Estate of Shirk*, supra; *Denison Mutual Telephone Co. v. Kendall*, supra.)

The question whether one survives another is to be determined as a matter of fact by evidence (*Horder v. Horder*, 23 Kan. *391; *White v. Atchison, T. & S. F. Rly. Co.*, 125 Kan. 537, 265 Pac. 73), and the rule permitting proof of death and survivorship by circumstantial evidence has been adopted by this court. (*Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 38, 46 P. 2d 22.) The degree of certainty of evidence to establish priority of death or the fact of survivorship is merely a preponderance of the evidence (22 Am. Jur. 2d, Death, § 298, p. 816), and need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the trier of the facts. (*Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215; *Security Milling Co. v. Ketchum*, 185 Kan. 694, 347 P. 2d 433.) The period of survival is immaterial. It has been held that if one party survived the other by a second or two, it is sufficient to meet the demands of survivorship. *Noller v. Aetna Life Ins. Co.*, supra.)

The facts that form the circumstantial and indirect evidence of the manner in which Della was killed by Isaac are essentially undisputed. The parties are agreed that a summary of those facts and the inferences to be logically drawn therefrom, may be stated as follows: Between the hours of 8:30 p. m. on September 5, and 7:50 a. m. on September 6, 1962, Isaac and Della were alone in their home in Abilene. Some time during this span of time (the exact time being completely immaterial), Isaac took an H & R .22 caliber revolver to the bedroom of his wife. Della was asleep at the time with a blindfold over her eyes. Isaac then proceeded to fire three bullets into Della's forehead and two bullets in to the left temporal region, one above the ear and one above and behind the ear. Isaac then proceeded out of the bedroom, through the living room, through the dining room, and into the kitchen, a distance estimated at 35 to 40 feet. Isaac then emptied the spent cartridges from the revolver into the wastebasket in the kitchen, removed fresh cartridges from a box of shells on the kitchen table and reloaded the empty chambers in the revolver. At some time thereafter, Isaac shot himself once near the center of his forehead with the revolver.

The medical testimony with respect to the relative time of death of Della and Isaac is set forth at length in the record. Dr. Weber's report to counsel, which was introduced in evidence, states:

"It is my opinion that Mrs. Pyke died almost immediately following the shooting. My opinion is based upon the extensive injury to the brain found at the autopsy. The brain injury is more extensive than that found in Mr. Pyke's brain. It is my opinion that Mrs. Pyke died before Mr. Pyke and any other interpretation would be improbable."

Dr. Carter testified that Della died almost instantaneously after five bullets had been shot into her head and that he could be reasonably medically certain she died prior to Isaac. It is evident there was ample evidence to support the finding that Della predeceased Isaac.

Likewise, the Kansas simultaneous death statute (K. S. A. 58-701, et seq.) is not applicable where there is "sufficient evidence that the persons concerned have died otherwise than simultaneously." Based upon the record, we are of the opinion the district court's conclusion of law that the foregoing statute was not applicable to the facts of this case was correct, and there is nothing to warrant a reversal of that conclusion.

The plaintiff strenuously contends the district court erred in refusing to find that Isaac intentionally and willfully inflicted the

fatal injuries upon Della, and argues that where there has been an intentional and deliberate killing, the killer cannot properly be construed to be the "surviving spouse" as the term is used in our statutes relating to descent and distribution (K. S. A. 59-501, *et seq.*), or the "surviving joint tenant" within the meaning of the joint tenancy statutes (K. S. A. 58-501 and 59-2286), or the "surviving beneficiary" with respect to insurance policies on the life of his victim. See, K. S. A. 40-414 and 40-415. As indicated, after hearing the evidence, the district court refused to make any finding involving intent, willful act, or lack of justification. The finding of criminal intent was requested to form the basis for the plaintiff's argument used throughout its brief that the killing of Della was a criminal act, a felony and a murder, as evidenced by its statement: *"In plain words, the killing of Della by Isaac was murder."*

It is conceded there was no charge, accusation, trial or conviction of Isaac for any felonious killing arising out of the occurrence which is the subject of this litigation. We do not speculate as to reasons why the district court refused to make the requested finding, except to say it was aware Isaac had not been convicted of feloniously killing Della, and had such a finding been made, it would have been contrary to some of our more traditionally poignant principles of justice. Deeply rooted in our system of jurisprudence is the principle that one cannot be tried *in absentia*, and this court has yet to sanction the practice of trying a man in his grave for the commission of a crime. (Bill of Rights, § 10.) Furthermore, such a finding would have been immaterial, and contrary to the public policy of this state as declared in K. S. A. 59-513 which reads:

"No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such person any portion of his estate."

The statute was enacted in 1939 (L. 1939, Ch. 180, § 35), and amended R. S. 22-133 which prohibited a person convicted of killing any other person from inheriting, or who would take by deed, will or otherwise from such other person, any portion of his estate. The latter statute was enacted at the 1907 Session of the Legislature (L. 1907, Ch. 193, § 1) after the case of *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112, 3 L. R. A. n. s. 726, had been decided in 1906. In that case, a husband killed his wife for the purpose of obtaining her property. She died intestate and childless. He was convicted of first degree murder. It was held:

"The power to declare the rule for the descent of property is vested in the legislature; and where it has provided in plain and peremptory language that a husband shall inherit from his deceased wife, and no exception is made on account of criminal conduct, the court is not justified in reading into the statute a clause disinheriting a husband because he feloniously killed his intestate wife for the purpose of acquiring her property." (Syl.)

The 1907 statute was first applied in *Hamblin v. Marchant,* 103 Kan. 508, 175 Pac. 678, opinion denying rehearing 104 Kan. 689, 180 Pac. 811, to a wife who shot and killed her husband. He had no children. The wife was convicted of manslaughter in the third degree. She contended the exception stated in R. S. 22-133 did not apply to persons convicted of manslaughter in the third degree. It was held the statute operated to bar one convicted of *killing* any other person; that a conviction of manslaughter was a conviction for *killing,* and that the statute prevented the wife from taking the property of her husband by inheritance or by contract growing out of the marriage relation.

The statute (R. S. 22-133) was construed in *Hogg v. Whitham,* 120 Kan. 341, 242 Pac. 1021. The husband murdered his wife on January 27, 1923, committed suicide on January 29, and on February 20, was convicted by a coroner's jury of the murder of his wife. It was said the statute disqualifies on account of homicide established in a particular manner; that it makes necessary the disqualifying criminal act be established by a conviction; that the word "conviction" is used in the statute in the same sense it bears in the Constitution, the Crimes Act, and the Code of Criminal Procedure, and that when the legislature has provided in plain language, the conditions of disherison from an intestate who was killed, the court is not justified in minimizing those conditions, or in reading different conditions into the statute. It was held the coroner's jury's verdict was not a conviction within the meaning of the statute, and that the husband could inherit from his deceased wife.

The statute was again considered in 1935. In *Noller v. Aetna Life Ins. Co.,* supra, the insured husband and the beneficiary wife died almost simultaneously and under circumstances that raised a question as to which one survived. The administrators of their respective estates sought to recover the proceeds of a policy of life insurance on the life of the husband. There was evidence the wife shot her husband and then committed suicide. It was argued the estate of the wife was barred from recovery by reason of the common-law rule that where the beneficiary of an insurance policy

feloniously kills the insured, it is against public policy to permit her to recover on the policy. In the opinion it was said:

". . . The answer to it is twofold. This court is unable to say that the evidence in the record compels the conclusion that Mrs. Hammatt killed Hammatt. That is merely one of the conclusions to which a jury might come after weighing the evidence. It is our duty to draw all the inferences and conclusions from the record that go to sustain the position of plaintiff. When this is done, it is still apparent that the jury might have concluded that the tragedy was the result of each one of the participants committing suicide.

"The other answer lies in the law. Situations such as this have been covered in a measure by the passage of R. S. 22-133 . . .

"That law was enacted in the session of 1907." (l. c. 40.)

The provisions of R. S. 1933 Supp. 40-414 (now K. S. A. 40-414) were then noted to the effect that the proceeds of any life insurance policy ". . . shall inure to the sole and separate use and benefit of the beneficiaries named therein . . ." free of any claims. Continuing, the court said:

"The above or a similar provision of the statute has been in force in our state for many years. It is the public policy of our state thus stated in language as plain and unambiguous as the law of descents and distributions that the proceeds of an insurance policy shall go to the beneficiary named in the policy.

"Without any doubt R. S. 22-133 was enacted to cure a situation such as that treated in *McAllister v. Fair*, supra. It will be noted that it provides that no one who shall be convicted of killing another person from whom they would inherit any property or would take property by deed, will or otherwise, shall take such property. The words 'or otherwise' would apply to a case where the person who did the killing was the beneficiary in an insurance policy.

"R. S. 22-133 only bars the person who did the killing when he has been convicted of the crime. Appellee makes the point that it is against public policy to permit a person to profit by the killing of another. It is the public policy of this state, as announced by the legislature, that such a person shall not take property from the murdered person in any manner whatsoever, but that he must be convicted of the crime before he is barred. This is the obvious intention of the legislature in enacting the various statutes to which reference has been made." (l. c. 41.)

And it was held:

"In order for the beneficiary of a life insurance policy who kills the insured to be barred from receiving the benefits of the policy, the beneficiary must first be convicted of the crime." (Syl. ¶ 3.)

As enacted in 1939, K. S. A. 59-513 modifies the statutes of descent and distribution and bars the wrongdoer from taking by inheritance or otherwise from a person feloniously killed by him, but makes conviction of the offense a condition precedent to the operation of the bar of the statute. The statute was applied in *Rosenberger v.*

*Northwestern Mutual Life Ins. Co.*, 182 F. Supp. 633, where it was said the only inquiry for a court in a civil action by a widow who had been convicted of fourth degree manslaughter of involuntarily killing her husband, was whether the conviction was for a degree of homicide wherein intent to kill was a necessary ingredient. It was held that conviction of fourth degree manslaughter was not a felonious killing making the bar of the statute operative. We do not pass upon the correctness of the federal court's application of K. S. A. 59-513. Since Isaac was not charged, tried or convicted of any offense, it is unnecessary to determine what criminal homicides are included in the term "feloniously killing" as used in the statute, and we leave the question open.

The right to succeed to property as a surviving joint tenant is another field and subject matter pre-empted by the legislature. The same legislature which enacted K. S. A. 59-513, also enacted The Property Act of 1939. The first section of that Act, K. S. A. 58-501, amended and clarified G. S. 1935, 22-132 so as to apply to both real and personal property in harmony with opinions of the court construing the section. In 1951 the legislature enacted what is now K. S. A. 59-2286. By these statutes the legislature has provided for the creation and termination of estates in joint tenancy and the requirements necessary for succeeding to such property by right of survivorship. The statutes were applied in *In re Estate of Foster*, 182 Kan. 315, 320 P. 2d 855, and it was said that in none of them has the legislature seen fit to limit or restrict the right of a surviving joint tenant to succeed to the property because of criminal conduct on his part, and it was held:

"The distinctive characteristic of joint tenancy is survivorship, and a surviving joint tenant of real property does not take as a new acquisition under the laws of descent and distribution, but under the conveyance by which the joint tenancy was created, his estate merely being freed from participation of the other.

"A husband and wife owned real estate as 'joint tenants with right of survivorship and not as tenants in common.' He killed her and was convicted of second degree murder. A dispute arose concerning whether the husband, as surviving joint tenant, succeeded to the entire interest in the property so owned, or whether he was barred, by the provisions of G. S. 1949, 59-513, which reads:

" 'No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such other person any portion of his estate.'

"*Held:* For reasons fully set forth in the opinion, the statute is inapplicable, and the husband, as surviving joint tenant, succeeded to the entire interest in the property in question." (Syl. ¶¶ 1, 2.)

In view of the foregoing, and the plaintiff's concession the provisions of K. S. A. 59-513 are not applicable since Isaac was not convicted of feloniously killing Della, we conclude the property owned by Della passed to Isaac in three different ways. First, the title to the residence in Abilene and nine shares of corporate stock having a combined appraised value of approximately $8,900, was in Della. Under the applicable law of descent and distribution, this property was inherited by Isaac as the surviving spouse of Della, pursuant to K. S. A. 59-504. (*McAllister v. Fair,* supra; *Hogg v. Whitman,* supra.) Second, at the time of their death, Della and Isaac owned property as joint tenants with right of survivorship and not as tenants in common, of the approximate value of $44,321, consisting of Series "E" United States Savings Bonds and checking accounts. Upon Della's death, Isaac became the surviving joint tenant and sole owner of this property. His ownership of the whole interest did not result from inheritance, but rather from the contracts of acquisition. (*In re Estate of Foster,* supra.) Third, the total approximate value of the proceeds of life insurance contracts amounted to $9,400. Isaac became entitled to those proceeds under the terms of the contracts and by virtue of his being the survivor or being designated as beneficiary therein. (*Noller v. Aetna Life Ins. Co.,* supra.) The district court properly concluded the property heretofore described and the proceeds of the life insurance policies were owned by the appellee-administrator of Isaac's estate.

The plaintiff forcefully argues that, assuming Isaac's administrator may be the owner of the property in question, the court, in the exercise of its equity power, should impress a constructive trust on the property for the benefit of the victim's heirs, excluding the felonious killer. It is asserted the constructive trust remedy permits the murderer to take the legal title and then declares him trustee of the beneficial title for the heirs of the victim, excluding the killer; that the only possible time the equitable remedy of constructive trust would conflict with K. S. A. 59-513 is when the murderer has been convicted of his crime which then disqualifies him from taking any portion of the victim's estate, and, as applied to the instant case, the application of the equitable remedy would merely supplement

the remedy under K. S. A. 59-513, since the statutory remedy does not provide appropriate relief for the intentional killing.

The theory of a constructive trust is merely a method by which this court is asked to by-pass existing rules established by the legislature relating to the descent of property, to succession of estates in joint tenancy, and to life insurance proceeds. Exceptions to those statutes are not to be made or arbitrarily declared by this court. In all our prior decisions, the court has expressed reluctance in enforcing the legislative enactments, but it has followed the laws as enacted by the legislature. The reasoning used by the court has varied, but it may be said that in each case considered, the contention the court should impress a constructive trust was urged in one form or another, and rejected upon the ground the power to declare the rules for the descent, succession or distribution of all property was vested in the legislature, and, where no exception was made on account of criminal conduct, or where the condition creating the bar was not established, this court was not justified in reading into the statutes a clause disinheriting a spouse because of a felonious killing. And so here. In passing, we note that when the legislature has considered conditions barring a convicted felon from taking an inheritance or otherwise from a person feloniously killed by him, it has raised, not lowered, the degree of homicide, and has made no other provision for the descent of property where an intestate married couple has no children and one spouse kills the other, and then commits suicide. In view of the foregoing, we reject the plaintiff's contention the court should impress the property in question with a constructive trust in favor of Della's heirs. (*McAllister v. Fair*, supra; *Hamblin v. Marchant*, supra; *Hogg v. Whitham*, supra; *Oberst v. Mooney*, 135 Kan. 433, 10 P. 2d 846; *Noller v. Aetna Life Ins. Co.*, supra; *In re Estate of Foster*, supra.)

As said in the McAllister and Foster cases, *supra*, it is abhorrent to the mind of every right-thinking person that one should receive property as a result of his crime, yet running through all of our cases are the positive statements that the public policy of this state is founded in the Constitution and the statutory enactments, and that this court is not warranted in reading into the plain statutory provisions an exception which those statutes themselves in no way suggest, or in holding they mean something else merely because the result under the particular circumstances leaves something to be desired.

The issue of taking evidence on the damages sought for Della's wrongful death was reserved for further trial by the district court only "in the event it was determined that Della survived Isaac." Upon application of the appellee administrator, the district court entered orders on all the remaining issues, including the wrongful death claim, in a journal entry, as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the foregoing findings and orders of this Court shall and do constitute a finding and order on every issue raised in the aforementioned consolidated cases, and upon the multiple claims and cross-claims of each of the parties hereto."

The foregoing order constituted a judgment upon all the multiple claims pursuant to K. S. A. 60-254; there are no remaining issues undisposed of in the district court.

We have fully reviewed the record and finding no reversible error, the judgment of the district court is affirmed.