**Roland A. DEXTER, Plaintiff-Appellant,**

**v.**

**Lorene C. DEXTER and Lorene C. Dexter as executrix of the will of Archie B. Dexter, Deceased, Defendant-Appellee.**

No. 72–1715.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 23, 1973.

Decided June 27, 1973.

Roland A. Dexter, Westport, Conn., for plaintiff-appellant.

Clifford T. Mueller, Prairie Village, Kan., for defendant-appellee.

Before PHILLIPS, HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

In this diversity action Roland A. Dexter appeals the district court's judgment denying him entitlement to the proceeds of certain real property owned at one time in joint tenancy by his deceased parents. In 1952, Archie and Olga Dexter purchased a 227-acre farm in Marshall County, Kansas. Eight years later this farm was sold and a trailer court purchased in Marysville, Kansas. Roland, the sole issue of Archie and Olga, was married and living in the eastern United States during the time these transactions occurred.

Although not in physical proximity Roland maintained a warm relationship with his parents. He corresponded with or telephoned them weekly, and usually visited them at least once a year. The

parents' affection for their son was also apparent. They often spoke of Roland to their friends, and on numerous occasions mentioned that when they were both gone Roland would inherit their property. These oral manifestations were corroborated by several wills executed by Olga and Archie while both were living. Each spouse by these instruments devised their contribution to the surviving spouse and expressed the desire that the surviving spouse provide amply for Roland.

In 1963, Olga died. Archie shortly thereafter executed a will devising all his property to Roland. In 1965, Archie married appellee Lorene C. Dexter in the state of Washington. From this point on, relations between Roland and Archie apparently deteriorated. In February, 1967, Archie executed his last will, devising all property to Lorene and in essence disinheriting Roland. In the same year Archie and Lorene conveyed the Marysville property to themselves as joint tenants. Subsequently they entered into contracts of sale for this property. Two deeds were placed in escrow pursuant to contract; one was later delivered and recorded, the other is still being held by the bank as escrow agent. Archie died testate in July, 1970, leaving all his estate to Lorene.

Roland contests the 1967 will. Three grounds are offered for his entitlement to Archie's property. First, he asserts there was an oral agreement between his parents that Olga's contribution to the purchase price of the Marshall County Farm and Marysville properties would be impressed with a trust should she die first. Archie would hold a life interest in the trust *res* with the residue going to Roland. Thus Roland is entitled to Olga's percentage of contribution. Second, the money contributed by Archie to the farm's purchase and later to the

purchase of town properties was a gift to Olga; thus all property held in joint tenancy became subject to the trust. Third, Lorene will be unjustly enriched if she is permitted to inherit the joint tenancy property since she contributed nothing to its purchase.

The trial court found that Archie and Olga owned all the real property in joint tenancy, no property had been solely owned by Olga during her lifetime, nor was there any written instrument creating a trust in favor of Roland in any of the property. The trial court further found as a matter of law that at Olga's death title to the property passed to Archie; that all of Archie's subsequent conveyances of that property validly passed title; and that at Archie's death Lorene by virtue of her survivorship became the sole owner of all property she and Archie owned as joint tenants.

The trial court concluded that any oral agreements between Archie and Olga were insufficient to create a trust in favor of Roland. At most they were expressions of Archie's and Olga's intentions and thus unenforceable since they were not reduced to writing and executed in the manner required by state law.[1]

Roland argues a constructive trust should be impressed because Archie wrongfully administered the corpus of a trust established in Roland's favor during Olga's lifetime. Roland further alleges Lorene does not deserve to retain the proceeds from these properties as she did not contribute to the purchase of them. The trial court rejected the constructive trust theory, holding the evidence insufficient to clearly and unequivocally establish the existence of a trust. Salisbury v. Tibbetts, 259 F.2d 59 (10th Cir. 1958). In Kansas, before a constructive trust may arise, there must be a showing of fraud, unconscionable conduct or questionable ethics re-

1. KSA 58—2401. No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing. Roberts v. Roberts, 180 Kan. 85, 285 P. 584 (1930); Engelbrecht v. Herrington, 101 Kan. 720, 172 P. 715 (1918).

sulting in unjust benefit to the wrongdoer. In re Estate of Zimmerman, 207 Kan. 354, 485 P.2d 215 (1971). There is no showing of wrongdoing by Archie or Lorene in this case. Furthermore, as a valid express trust had not been created, Archie could not have been guilty of wrongfully administering a non-existent trust. As for Lorene, she is not holding property contrary to law. Regardless of the equities, an oral trust may not superimpose a deed absolute in its terms, for if this were so deeds would no longer be valuable as muniments of title. Silvers v. Howard, 106 Kan. 762, 190 P. 1 (1920). See also In re Estate of Zimmerman, supra; Anderson v. Anderson, 155 Kan. 69, 123 P.2d 315 (1942); Goff v. Goff, 98 Kan. 201, 158 P. 26 (1916).

The trial court also rejected Roland's argument that a resulting trust arose by virtue of K.S.A. 58–2408. This statute provides, inter alia, that a resulting trust arises when it appears that by agreement and "without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof." The Court holds this statute does not apply when title to property is taken in joint tenancy.

The evidence also indicates Archie and Olga took title to their properties as joint tenants. Their respective interests were acquired by the instruments of conveyance creating the joint tenancy. Archie did not take Olga's interest as a new acquisition, as under the laws of descent and distribution, but under the conveyances by which the joint tenancy was created. United Trust Company v. Pyke, 199 Kan. 1, 427 P.2d 67 (1967). Upon Olga's death Archie therefore succeeded to a full estate in the properties and could do with them as he pleased.

We have carefully researched applicable Kansas law and find no error in the trial court's decision based upon the facts as found. Although we might sympa-

thize with Roland, we are not at liberty to alter state law to meet the equities of the case.

Affirmed.