(574 P.2d 229)
No. 48,770

In the Matter of the Estate of Robert Dean Shields, Deceased; MICHAEL B. SHIELDS, Administrator, and PATRICIA LYNN KNIGHT, *Appellees,* v. VICTORIA ANN SHIELDS, *Appellant.*

Petition for review granted January 25, 1978.

Opinion filed December 2, 1977.

*Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, for appellant.

*James F. Richey,* of Rumsey & Richey, of Wichita, for appellees.

*Robert D. Hecht* and *Robert E. Keeshan,* of Scott, Quinlan & Hecht, of Topeka, as *amici curiae.*

Before HARMAN, C.J., REES and SWINEHART, JJ.

REES, J.: This is an action for determination of the distribution of the property of Robert Dean Shields, who died intestate of gunshot wounds inflicted by his wife, Victoria Ann Shields, on December 6, 1974. Victoria has been convicted of feloniously killing Robert. The two children of the couple claim that by reason of K.S.A. 59-513 Victoria has no interest in any property in which Robert had an interest. Victoria appeals from the district court ruling upholding the claim of the children.

Victoria claims she is the owner of one-half the real and personal property owned by her and Robert as joint tenants and if her claimed ownership is prevented by K.S.A. 59-513, the statute is an unconstitutional contravention of Section 12 of the Bill of Rights of the Kansas Constitution.

The pertinent part of the district court decision is as follows:

"3.   Victoria Ann Shields has no interest in the property of the estate of Robert Dean Shields, deceased, whether it be property owned by Robert Dean Shields individually or property owned jointly between Robert Dean Shields, deceased, and Victoria Ann Shields. That the statute K.S.A. 59-513 is clear in its meaning.

"4.   That K.S.A. 59-513 is constitutional."

Joint tenancy has been the subject of many decisions of our Supreme Court and it recently has been the subject of decisions of this court. In awareness of that case law, we believe it proper to state the three material facts before us: (1) Real and personal

property was owned by two persons in joint tenancy; (2) one joint tenant is dead; and (3) the surviving joint tenant has been convicted of the felonious killing of the deceased joint tenant. The issue before us is determination of the property interest of a joint tenant who has been convicted of the felonious killing of the other joint tenant.

L. 1970, Ch. 225, § 1 (referred to herein as K.S.A. 59-513)[1] reads as follows:

"No person who shall be convicted of feloniously killing, or procuring the killing of another person shall inherit or take by will, by intestate succession, as a surviving joint tenant, as a beneficiary under a trust or otherwise from such other person any portion of his estate or property in which the decedent had an interest: Provided, That when any person shall kill or cause the killing of his spouse, and shall then take his own life, the estates and property of both persons shall be disposed of as if their deaths were simultaneous pursuant to the provisions of K.S.A. 58-701 to 58-705, inclusive."

Section 12 of the Bill of Rights, as amended in 1972, states:

"No conviction within the state shall work a forfeiture of estate."

The questions before us have been before the appellate courts of other states. Various and irreconcilable dispositions have resulted. We will not attempt to set forth all views which have found a following.

Some states have taken the view that a killer loses all interest in property held in joint tenancy with the victim. *Van Alstyne v. Tuffy,* 103 Misc. 455, 169 N.Y.S. 173; *Merrity v. Prudential Ins. Co. of America,* 110 N.J.L. 414, 166 A. 335; *Sikora v. Sikora,* 160 Mont. 27, 499 P.2d 808. The position is a minority one and we find it incompatible with Section 12 of the Bill of Rights.

Several states have employed constructive trusts to limit, but not totally destroy, the killer's interest in property held in joint tenancy with the victim. A frequently adopted view is that the killer should be limited, as a matter of equity, to a life interest in one-half the earnings of the property and this is implemented by judicial imposition of a constructive trust that affords to the heirs of the deceased one-half the earnings of the property and a

---

1. The 1970 Session Laws set forth the statutory language as quoted. K.S.A. 59-513 contains the word "*the*" in the phrase "any portion of *the* estate or property." The change is the result of editing and cannot alter the sense, meaning or effect of the Act. K.S.A. 1976 Supp. 77-136.

remainder interest that ripens into full ownership of the property upon the death of the killer. *Hargrove v. Taylor,* 236 Or. 451, 389 P.2d 36; *Colton, et al. v. Wade,* 32 Del. Ch. 122, 80 A.2d 923; *Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188; 51 A.L.R. 1100; Restatement of Restitution, § 188; 4 Scott on Trusts, §493.2 (2d ed. 1956). We do not believe the imposition of a constructive trust in the disposition of this case is possible in light of our Supreme Court's expressed opposition to constructive trusts in such circumstances. *In re Estate of Pyke,* 199 Kan. 1, 13-14, 427 P.2d 67.

Other states have taken the position that the killing of one joint tenant by the other joint tenant operates as a severance of the joint tenancy resulting in a tenancy in common whereby the killer retains ownership of an undivided one-half interest in the property and the other one-half interest vests in the heirs of the victim. *Grose v. Holland,* 357 Mo. 874, 211 S.W.2d 464; *Bradley v. Fox,* 7 Ill. 2d 106, 129 N.E.2d 699; *Cowan v. Pleasant,* 263 S.W.2d 494 (Ky. 1953); *Johansen v. Pelton,* 87 Cal. Rptr. 784, 8 Cal. App. 3d 625.

Persuasive language for this approach appears in *Johansen v. Pelton,* supra, as follows:

". . . [T]he result to be obtained may vary depending on whether the problem is approached from the viewpoint of what the slayer had, or what the victim lost. The now generally repudiated rule that the survivor take all disregards the general principles of unjust enrichment . . . and fails to consider at all what the malefactor gained. The New York rule and that recommended in the comment in the Restatement appears to unduly weigh what the victim lost. It does so to the derrogation of what the slayer had before, equitably if not legally. The seeming anomaly that the part gained and the part lost cannot be reconciled is due to the fact that the inchoate rights—with survivorship—of the two joint tenants are in reality greater than the whole while the tenancy exists. Any solution must, therefore, at best be a compromise. For the reasons set forth above it is concluded that a solution which recognizes the slayer's preslaying inchoate right to one-half the property is most equitable." (pp. 791-792.)

A particularly relevant case is the decision of the Oklahoma Supreme Court in *Duncan v. Vassaur,* 550 P.2d 929 (Okla. 1976). Oklahoma has a "forfeiture of estate" prohibition in its Constitution similar to that of Kansas. Okla. Const., Bill of Rights, Art. 2, § 15. Oklahoma also has a "slayer statute" (84 O.S. 1971, § 231) essentially the same as K.S.A. 59-513 which guided the Oklahoma court in arriving at its conclusion although it was not in effect at the time of the murder. In factual circumstances very similar to those of the present case, the court concluded that the murder of

the husband by his wife severed the joint tenancy, resulting in a tenancy in common, saying in part:

"We are of the opinion that the most equitable solution of the question is to hold that by the murder, the joint tenancy is separated and terminated and one-half of the property should go to the heirs of the deceased husband (murdered person) and the other one-half to the murderer, wife, or to her heirs, when deceased. By such holding, the joint tenancy is changed to a tenancy in common. We so hold." (p. 931.)

Pre-1970 Kansas case law, constitutional language and predecessors of K.S.A. 59-513 we consider of material relevance, in chronological order, are: Bill of Rights, § 12 (prior to amendment in 1972); *McAllister v. Fair,* 72 Kan. 533, 84 Pac. 112; G.S. 1915, § 3856 (L. 1907, Ch. 193, § 1); *Hamblin v. Marchant,* 103 Kan. 508, 175 Pac. 678; G.S. 1939, 59-513 (L. 1939, Ch. 180, § 35); *In re Estate of Foster,* 182 Kan. 315, 320 P.2d 855; and *In re Estate of Pyke,* supra.

In *Foster* the joint tenants were husband and wife. The husband was convicted of the felonious killing of his wife. The statute then in effect, G.S. 1949, 59-513, provided that a slayer did not "inherit, or take by will or otherwise from [the deceased] any portion of his estate." It was held the wife's interest in the property became no part of her estate and the husband took the whole property by the original conveyance. In *Pyke* the joint tenants also were husband and wife. It was found that the husband killed his wife and then committed suicide. The husband was the wife's sole heir. Obviously the husband was not convicted of felonious killing. It was held the husband's heirs succeeded to the joint tenancy property. In our view, the 1970 enactment of the present K.S.A. 59-513 was a legislative response to *Foster* and *Pyke.*

The incidents of joint tenancy and the rights of joint tenants are aptly and sufficiently described in *Eastman, Administrator v. Mendrick,* 218 Kan. 78, 542 P.2d 347, as follows:

"The doctrine of joint tenancy and its application to personal as well as to real property has been recognized in this state for many years. (*Malone v. Sullivan,* 136 Kan. 193, 14 P.2d 647; and *In re Estate of Biege,* 183 Kan. 352, 327 P.2d 872, and cases cited therein.) From the many cases dealing with the doctrine certain rules have emerged which are presently recognized in this jurisdiction. Running through all of our cases, commencing with *Simons v. McLain,* 51 Kan. 153, 32 Pac. 919, is the concept that the grand incident of joint tenancy is survivorship, by which the entire tenancy, on the demise of any joint tenant, descends to the survivor or survivors and at length to the last survivor. This concept of joint

tenancy was most recently stated in *Johnson v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286, 524 P.2d 1127, wherein we held:

" 'Survivorship is the distinctive characteristic and the grand incidence of an estate in joint tenancy. On the death of a joint tenant the property descends to the survivor or survivors and the right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor.' (Syl. 3.)" (pp. 81-82.)

". . . [U]nder a joint tenancy agreement . . . a surviving joint tenant . . . does not take as a new acquisition from the deceased joint tenant under the laws of descent and distribution, but under the conveyance or contracts by which the joint tenancy was created, his estate merely being freed from the participation of the other. (*In re Estate of Pyke,* 199 Kan. 1, 427 P.2d 67; *In re Estate of Foster,* 182 Kan. 315, 320 P.2d 855; and *Dexter v. Dexter,* [10th Cir. 1973] 481 F.2d 711.) Prior Kansas decisions, dealing with the incidents of joint tenancy, are reviewed in *In re Estate of Foster,* supra, and it is pointed out that the rights of joint tenants become vested by the conveyance; that each holds one and the same interest; and that nothing descends to the survivor, nor does he acquire any new title or estate by virtue of the death of the other grantee, but that such survivor takes the whole estate by the original conveyance." (pp. 83-84.)

Thus we find that *each* joint tenant has a *vested* identical interest. The effect of the death of one of two joint tenants is that the survivor "takes" the interest of the deceased and the resulting interests of the survivor are freed from participation of the deceased.

K.S.A. 58-703 directs that in the event of simultaneous death of two joint tenants the property shall be distributed one-half as if one had survived and one-half as if the other survived. This is indicative of legislative recognition that a joint tenant is the owner of an interest equal to that of each other joint tenant.

We conclude that the result of proper statutory construction is that a surviving joint tenant who is convicted of the felonious killing of the other joint tenant succeeds to an undivided one-half interest in the property. Although it may be argued that such surviving joint tenant has gained because the one-half interest has been freed of participation of the deceased, to hold otherwise would result in a taking of the survivor's vested equal interest in the property. The loss by the survivor of his or her vested interest is not imposed as a penalty for the felonious killing under our penal statutes and such penalty would, in our view, constitute a forfeiture in contravention of Section 12 of the Bill of Rights. (See *Hamblin v. Marchant,* supra, at 510.)

It would be unreasonable to construe K.S.A. 59-513 to direct, in cases such as the one before us, that if the surviving spouse

should take his or her own life, one-half the property would be distributed to his or her devisees, legatees or heirs, but in absence of suicide there is no interest in the property subject to devise, bequest or intestate succession. Although not material to the case before us, we also believe the possibility that a convicted slayer could resurrect an interest in property previously held in joint tenancy by taking his or her own life is both unreasonable and contrary to legislative intent.

In *Foster*, the court looked to G.S. 1955 Supp. 58-501 (now K.S.A. 58-501), relating to the creation of tenancies in common and joint tenancies, G.S. 1949, 58-703 (now K.S.A. 58-703), relating in part to disposition of joint tenancy property upon simultaneous death of the joint tenants, and G.S. 1955 Supp. 59-2286 (now K.S.A. 59-2286), relating in part to termination of joint tenancies by death. The court said:

"It is significant to note that in *none* of the mentioned statutes relating to the creation of joint tenancies, or the termination thereof by death, has the legislature seen fit to limit or restrict the right of a surviving joint tenant because of criminal conduct on his part." (182 Kan. at 320.)

As we view it, in 1970 the legislature saw fit to limit or restrict the right of such surviving joint tenant. It did not undertake to eliminate, take away or direct forfeiture of all right of such surviving joint tenant.

In our consideration of this matter, we have been guided in part by the following principles:

".  .  . The various provisions of a statute in *pari materia* must be construed together with a view of reconciling and bringing them into workable harmony if it is reasonably possible to do so. (*Callaway v. City of Overland Park,* 211 Kan. 646, 508 P.2d 902.)  .  .  . In construing a statute the legislative intent is to be determined by a general consideration of the whole act. Effect should be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*Fleming Company v. McDonald,* 212 Kan. 11, 16, 509 P.2d 1162.)  .  .  ." *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 332-333, 552 P.2d 1363.

".  .  . It is the court's duty to uphold legislation rather than defeat it. It is presumed that the legislature intended to pass a valid law. If there is any reasonable way to construe legislation as constitutionally valid it should be so construed. (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P.2d 937, and cases cited.)" *Harris v. Shanahan,* 192 Kan. 629, 635, 390 P.2d 772.

"When the constitutionality of a statute is challenged, this court is guided in its consideration by certain principles which were recently noted in *Leek v. Theis,* 217 Kan. 784, 792-93, 539 P.2d 304, 312-313:

" 'Long-standing and well established rules of this court are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [cases cited.]' " *Rogers v. Shanahan*, 221 Kan. 221, 223, 565 P.2d 1384.

When Victoria Shields killed her husband and was subsequently convicted of second degree murder, the joint tenancy was severed and terminated and she became a tenant in common with the heirs of her husband. She retains an undivided one-half interest in the property. The lower court erred in depriving her of that interest.

An *amicus curiae* brief was filed raising issues which were not presented in the briefs of the parties and which do not appear to have been before the district court. These issues are not discussed since our rule is that an *amicus curiae* brief may not raise such issues. *Cook v. Dobson Sheet Metal Works,* 157 Kan. 576, 142 P.2d 709; *State, ex rel., v. Hines,* 163 Kan. 300, 182 P.2d 865; *Hensley v. Board of Education of Unified School District,* 210 Kan. 858, 504 P.2d 184.

Reversed and remanded for further proceedings consistent with the views expressed herein.